JOHN A. EARL, PLAINTIFF-APPELLANT, v. WALTER G. WINNE, CHARLES DeLISLE, AND CARL DeMARCO, DEFENDANTS-RESPONDENTS.

Argued October 26, 1953—Decided December 14, 1953.

*Mr. Ervin S. Fulop* argued the cause for the appellant (*Messrs. Moser and Griffin,* attorneys; *Mr. Richard G. Moser, Mr. Bryant W. Griffin* and *Mr. Russell T. Kerby, Jr.,* on the brief; *Mr. Edward O. West,* of counsel).

*Mr. Joseph Weintraub* argued the cause for the defendants (*Messrs. McGlynn, Weintraub and Stein,* attorneys).

The opinion of the court was delivered by

OLIPHANT, J. This is an appeal from a judgment of dismissal entered in the Superior Court, Law Division, Bergen County, in favor of the defendants-respondents. It is here on certification under *R. R.* 1:10–1(*a*).

The defendant-respondent, Mr. Winne, was and is the Prosecutor of the Pleas of Bergen County. The defendants-

respondents, DeLisle and DeMarco, are prosecutor's detectives in the Bergen County Prosecutor's office. The action instituted by the appellant sought civil redress for his arrest and indictment for criminal libel under *Article I, paragraph 6, Constitution of* 1947. *R. S.* 2:146–1. The complaint consisted of six counts; the first count was for false arrest and false imprisonment; the second count was for malicious prosecution; the third count was for malicious abuse of process; the fourth count was for conspiracy to make a false arrest to falsely imprison the plaintiff; the fifth count was for conspiracy to maliciously prosecute the plaintiff, and the sixth count was for conspiracy to maliciously abuse process as against plaintiff.

The answer was a general denial and set up several defenses, among which were the statute of limitations and the lack of civil liability upon the part of the defendants as public officers. In dismissing the complaint the trial court held that the two-year statute of limitations set forth in *R. S.* 2:24–2 was applicable and it was further held that the action would not lie against a prosecutor and his detectives, citing *Edelman v. Dunn,* 8 *N. J. Misc.* 154 (*Sup. Ct.* 1930), and *O'Regan v. Schermerhorn,* 25 *N. J. Misc.* 1 (*Sup. Ct.* 1946).

The pertinent dates involved here are that this action was instituted by the plaintiff-appellant on April 9, 1952; the date of the alleged arrest was on May 2, 1946 and the complaint for criminal libel was issued against him and he posted bail on the same day. He was indicted on May 11, 1946 and entered a plea of not guilty. On June 15, 1946, plaintiff-appellant retracted the statement which was the basis of the libel, but a *nolle pros* on the indictment was not entered until June 29, 1949, which was about three years prior to the institution of this action.

The event, which set up the chain reaction with which we have to deal here, was a statement made in a political speech on May 1, 1946, in which the plaintiff said "and Winne's detective chief, Michael Orecchio, is the contact man for Winne with the gambling system." Before he said this he

inquired whether members of the press were present, and upon receiving an affirmative response said they wanted publicity for the entire meeting and the newspaper men could use "as much as they cared to," the same as at any other political meeting.

It is this statement that the defendants claim was a criminal libel under the provisions of *R. S.* 2:146–1.

On May 2, 1946, while the appellant was attending a luncheon at a public restaurant, he was called out of the meeting by the two detectives, DeLisle and DeMarco, who inquired of him whether or not he had made the alleged libelous statement. He refused to admit or deny it, and while he was standing by the detectives went to a telephone booth and presumably called their office. When they came out they told him that "Winne said to bring him in." He informed the detectives that they could not arrest him without a warrant and he further testified on depositions that they attempted to usher him into their automobile. There is some dispute as to what exactly happened next but the appellant did go back into the meeting and talked with a friend who was a lawyer. While this was going on the detectives came in again and said "we are going to take you in." No force was used but he informed them he was going in his own car and he would stop at his office. He got in his own car, stopped at his office and at all times was followed by the two detectives in their car. He then went on to the prosecutor's office where he alleges the defendant, Winne, asked him whether he had made such a libelous statement, and on refusal to answer the question Winne ordered a warrant be issued for his arrest and the plaintiff's bail set at $5,000. The criminal complaint was signed by the defendant DeLisle, and the appellant was fingerprinted, photographed and put in jail until the bail was produced.

■■ Reverting now to the language used by the plaintiff-appellant in the political address in question, the language expressly and by innuendo imputes that the defendant, Winne, was guilty of malfeasance in office. Remarks are defamatory *per se* if they impute directly or by innuendo

malfeasance on the part of a public official. *Garven v. Finch*, 97 *N. J. L.* 329 (*E. & A.* 1921); *Reilly v. Curtiss*, 83 *N. J. L.* 77 (*Sup. Ct.* 1912). They are actionable when thus spoken or written. *Shaw v. Bender*, 90 *N. J. L.* 147 (*E. & A.* 1917). See also *Walsh v. Trenton Times*, 124 *N. J. L.* 23 (*E. & A.* 1940); *Kelly v. Hoffman*, 137 *N. J. L.* 695 (*E. & A.* 1948); *State v. Reade*, 136 *N. J. L.* 432 (*Sup. Ct.* 1948); 2 *Chitty Blackstone* *151; 3 *Chitty Criminal Law* (*4th ed.* 1841), *867; 1 *Russell on Crimes* (*9th ed.*), 321; 1 *Odgers on Libel and Slander* 41. Such libels are clearly indictable under the common law, our Constitution and *R. S.* 2:146–1.

The theory that such libels tend to create animosity and disturb the public peace is the basis of the criminal prosecution. 2 *Chitty Blackstone* *151; 1 *Russell on Crimes* 321. Such words are defamatory *per se* and are redressable by an action for slander if made orally and an action for libel if the defamatory words are written or printed. But the mischief and damage is greater in a libel since the record is permanent and therefore presents a situation which is a continuing invitation to breaches of the peace. It is the libel which is the indictable offense rather than the slander, and the publication of the libel is one of the elements of the crime.

Under the facts here presented the appellant did not actually publish the libel. This apparently was done by newspapers circulating in Bergen County, which published the reports of their reporters who had attended the meeting in question. There is respectable authority that insofar as this appellant is concerned that this amounts to a publication within the law of criminal libel, 1 *Odgers on Libel and Slander* 120, and the cases cited there, and in particular the case of *Parkes v. Prescott and Ellis*, *L. R.* 4 *Ex.* 169; 38 *L. J. Ex.* 105; 17 *W. R.* 773; 20 *L. T.* 537. In this latter case, at a meeting of the board of guardians at which reporters were present one of the members charged facts that imputed the plaintiff was guilty of a misdemeanor. Ellis, one of the guardians, said "I hope the local press will take notice of this

very scandalous case." The chairman, Prescott, remarked "I am glad gentlemen of the press are in the room and I hope they will give publicity to the matter," and then Ellis added "And so do I." From the notes taken in the room the reporters prepared condensed accounts which appeared in the local newspapers and which though partly in the reporters' own language were substantially correct reports of what took place at the meeting. The judges of the Court of Exchequer by a divided vote held that the trial judge was wrong in directing that there was no evidence to go to the jury in that there was no publication in the strict sense. The appellate court held that Prescott and Ellis had directed the publication of the account which appeared in the papers and therefore a case was made out.

The eminent writer, Odgers, says that such a rule is helpful where the words if spoken are not actionable but are so if written. He says, at *page* 119 of his work

"Here, though the proprietor of the newspaper is of course liable for printing them, still it is more satisfactory, if possible, to make the author of the scandal defendant. An action of slander will not lie; but if he spoke the words under such circumstances as would ensure their being printed, or if in any other way he requested or contrived their publication in the paper, he is liable in an action of libel as the actual publisher. *Qui facit per alium facit per se.*"

So on an indictment for criminal libel on the trial a *prima facie* case would be made and the question would be for the jury.

■■ Now, as to false arrest it has been repeatedly held in this State and elsewhere that the use of physical force is not altogether necessary. The essential thing is the constraint of the person. This constraint may be caused by threats as well as by actionable force, and the threats may be by conduct or by words. If the words or conduct are such as to induce a reasonable apprehension of force and the means of coercion is at hand, a person may be as effectually restrained and deprived of liberty as by prison bars. Unless it is clear that there is no reasonable appre-

hension of force, it is a question for the jury whether the submission was a voluntary act, or brought about by fear that force would be used. No doubt cases may arise where it will be a question of difficulty to determine how far the free will of the plaintiff was overcome but that determination rests with the jury. *Hebrew v. Pulis*, 73 *N. J. L.* 621, 624 (*E. & A.* 1906).

■ The gist of false imprisonment is merely unlawful detention without more. *Lakutis v. Greenwood*, 9 *N. J.* 101, 106 (1952); 1 *Addison on Torts* (*6th ed.*), *147. False imprisonment is a wrong akin to the wrongs of assault and battery, and consists in imposing, by force or threats, unlawful restraint upon a man's freedom of locomotion. 1 *Cooley on Torts* (*4th ed.*), *section* 109; *Restatement of the Law of Torts, sections* 35 and 40.

■ The fundamental difference between an action for malicious prosecution and one for false imprisonment is that in the former the detention is malicious, but under the due forms of law, whereas in the latter the detention is without color of legal authority. *Pine v. Okzewski*, 112 *N. J. L.* 429, 432 (*E. & A.* 1934). And the action for malicious prosecution is likewise distinguishable from the action for the malicious abuse of process. This distinction is carefully pointed out by Mr. Justice Perskie in *Ash v. Cohn*, 119 *N. J. L.* 54 (*E. & A.* 1937), at *page* 58, where he said:

"The two actions are, however, distinguishable. An action for malicious abuse of process is distinguished from an action for malicious use of process, in that the action for abuse of process lies for the improper, unwarranted, and perverted use of process after it has been issued while that for the malicious use of it lies for causing process to issue maliciously and without reasonable or probable cause. *Grainger v. Hill*, 4 *Bing. N. C.* 212. Thus it is said in substance, that the distinction between malicious use and malicious abuse of process is that the malicious use is the employment of process for its ostensible purpose, although without reasonable or probable cause, where as the malicious abuse is the employment of a process in a manner not contemplated by law. Another fundamental distinction is that in the case of malicious use it is necessary to allege that the action in which the process

was used has terminated favorably to the plaintiff whereas in the case of the malicious abuse no such allegation is necessary. *Saliem v. Glovsky*, 1924, 132 *Me.* 402; 172 *A.* 4; 50 *C. J.* § 373, *p.* 612."

These distinctions are set forth because they have some bearing upon the contentions raised on this appeal.

The appellant on the one hand contends that the two-year statute of limitations applies to all the causes of action set forth in the complaint, and on the other hand the respondent contends that the six-year statute of limitations applies. The statutes now provide as follows:

"2A:14–1.  6 years.  Every action at law for trespass to real property, for any tortious injury to real or personal property, for taking, detaining, or converting personal property, for replevin of goods or chattels, *for any tortious injury to the rights of another not stated in sections* 2A:14–2 *and* 2A:14–3 of this title, or for recovery upon a contractual claim or liability, express or implied, not under seal, or upon an account other than one which concerns the trade or merchandise between merchant and merchant, their factors, agents and servants, shall be commenced within 6 years next after the cause of any such action shall have accrued.
"2A:14–2.  2 years;  actions for injuries to person by wrongful act.  Every action at law *for an injury to the person caused by the wrongful act,* neglect or default of any person within this state shall be commenced within 2 years next after the cause of any such action shall have accrued."  (Italics supplied.)

The point at issue is whether or not in each of these causes of actions redress is sought for "injury to the person" or "tortious injury to the rights of another."

Our original statute of limitations, *L.* 1799, *Pat. Revision of* 1821, *page* 410, was identical with 21 *Jac.* I, *chapter* 16, *section* 3, *et seq.*  See *Addison on Torts, supra, p.* *67: 1 *Tidds Practice* (*3rd Amer. ed.*), *p.* 14, except in reference to persons beyond the seas and as to specialties and non-resident debtors, *Dekay v. Darrah's Adm'rs,* 14 *N. J. L.* 288, 293 (*Sup. Ct.* 1834); *Miller v. Board of Chosen Freeholders,* 10 *N. J.* 398, 404 (1952).  The statute remained the same with changes in minor details not here significant until 1896.  *Revision of the Laws* 1877, *page* 594.

At the common law the remedy to recover damages for immediate wrongs accompanied by force to the person, by

menace, assault, battery, wounding, mayhem or false imprisonment, was not by an action in simple trespass or on the case but by an action of trespass *vi et armis*. 1 *Tidd's Practice, supra, page* \*6; 1 *Chitty on Pleading* (16th ed.), page 187; 2 *Chitty Blackstone* \*138. False imprisonment was redressable as an immediate wrong "\* \* \* to the person" by an action of trespass *vi et armis*, and the limitation on this action was four years.

On the other hand, redress for the malicious prosecution of civil suits or criminal charges and malicious abuse of process was by the common law action on the case. 1 *Tidd's Practice, supra, page* \*6; 1 *Chitty on Pleading, page* 149, 206. Under the common law there was a clear and basic distinction between the action of trespass *vi et armis* and the action on the case. The distinction was recognized in the difference in the periods of limitations in our original statute.

*L.* 1896, *c.* 77, amended section 3 of the original act to read as follows:

"3. Every action upon the case for words shall be commenced and sued within two years next after the words spoken and not after, and that all actions hereafter accruing for *injuries to persons caused by the wrongful act, neglect or default* of any person or persons, firm or firms, individual or individuals, corporation or corporations within this state, shall be commenced and instituted within two years next after the cause of such action shall have accrued and not after." (Italics supplied.)

In *Tomlin v. Hildreth*, 65 *N. J. L.* 438 (*Sup. Ct.* 1900), our Supreme Court in a false imprisonment case held that the 1896 act impliedly repealed section 2 of the original act which allowed a four-year limitation on an action for trespass for assault, menace, battery, wounding, mayhem or false imprisonment, since it was the legislative intention to have the two-year limitation cover all actions "for injuries to persons" which could be said to arise out of a wrongful act, neglect or default of any person. *Cf. Crane v. Ketcham*, 83 *N. J. L.* 327, 331 (*Sup. Ct.* 1912), to the same effect. Certainly it cannot be denied that the common law action for trespass *vi et armis* was comprehended by the phrase

"injury to persons caused by wrongful act * * *" or that action for false imprisonment likewise was so included. A different legislative intention could not be spelled from the mere substitution of an inclusive generic phrase instead of the specific designations of the various common law actions.

Subsequent to the 1896 amendment, which did not amend section 1 of the original act, it has been held that the limitation on an action for malicious prosecution was six years. *Kearney v. Mallon Suburban Motors, Inc.*, 23 *N. J. Misc.* 83 (*Circ. Ct.* 1945); *McGrath v. Keenan*, 24 *N.. J. Misc.* 121 (1946), and these holdings were sound because the remedy for malicious prosecution and malicious abuse of process was an action *on the case*. By the express language of section 1 of the act the limitation was six years on an action on the case.

In the *Revision of* 1937, section 1 was re-enacted in practically its original terms. *R. S.* 2:24–1. Section 3 as amended was re-enacted as *R. S.* 2:24–2 and the revisers substituted the plural nouns "injuries" and "persons" for the collective nouns "injury" and "person". This again was a mere change in word style and not of meaning. The reference to slander was placed in a new paragraph and the limitation reduced to one year. *R. S.* 2:24–3.

In the recent revision section 1 of the act was re-written and following the prior pattern the generic terms and phrases "any tortious injury to real or personal property" and "any tortious injury to the rights of another" were again substituted for the specific common law references except as to "trespass to real property" and "replevin." The common law references to the types of action were necessarily deleted because today we have no such actions as such with their technical distinction, but a single form of action, "a civil action." *R. R.* 4:2.

Such changes in language do not evince a clear legislative intent to make a significant change in the meaning of the statute, and hence no such intention can be implied. *Crater v. Somerset County*, 123 *N. J. L.* 407 (*E. & A.* 1939). As revised, the statute has been construed as placing a limita-

tion of six years on an action for malicious prosecution. *Cabakov v. Thatcher*, 27 *N. J. Super.* 404 (*App. Div.* 1953).

██ We have concluded that an action for false imprisonment must be brought within two years and an action for malicious prosecution and malicious abuse of process must be brought within the six-year period. Therefore, the action of the trial court in dismissing the first and fourth counts of the complaint relating to the false arrest and imprisonment was proper. On the other hand the trial court was in error in dismissing the second and fifth counts relating to malicious prosecution and the third and sixth counts relating to malicious abuse of process since they were not barred under the six-year statute.

The appellant contends that an action will lie against the prosecutor for false imprisonment, malicious prosecution or a malicious abuse of process. Respondent on the other hand contends that a prosecutor, being an officer of the law, has an absolute immunity from such suits.

██ The general rule is that an action will not lie against a judicial officer for an error in judgment, however prejudicial to the rights of a party such error may be. *Taylor v. Doremus*, 16 *N. J. L.* 473 (*Sup. Ct.* 1838); *O'Regan v. Schermerhorn, supra.* So it has been held in *Nann v. Lloyd*, 50 *N. J. L.* 1 (*Sup. Ct.* 1887), that a prosecutor of the pleas had the same immunity as a sheriff and his officers in executing process that on its face appeared to have been regularly issued by a court having jurisdiction of the subject matter. Again in *Edelman v. Dunn, supra*, it was held that an assistant prosecutor could not be liable for an error in judgment made in the course of his duty in relation to an arraignment and fixing of bail.

Contrariwise, magistrates and police inspectors, police captains and probation officers have been civilly held liable in this state for false arrest and malicious prosecution, where they acted without color of legal authority. *Grove v. Van Duyn*, 44 *N. J. L.* 654 (*E. & A.* 1882); *Shaefer v. Smith*, 92 *N. J. L.* 267 (*Sup. Ct.* 1919); *Collins v. Cody*, 95 *N. J. L.* 65 (*Sup. Ct.* 1920); *Lakutis v. Greenwood, supra.*

The basis of this distinction is the legal effect of the affidavits upon which a court having cognizance over the class of cases to which it appertains places its process of arrest in the hands of proper officials to execute it. *Hann v. Lloyd, supra.* The distinction established by the cases is that where the affiant states the facts truly and the judicial officer thereupon does an act which the law will not justify, the affiant is not liable because in that case the grievances complained of arise from a mistake of the judge and no wrongful act of the affiant. But where the affiant falsely and maliciously states facts untruly and procures a warrant to be issued he becomes responsible for the prosecution and arrest, because if he had not made the false affidavit and asked for the issuing of the warrant, the court could not and would not have decided that criminal process should issue. Malice and want of probable cause are thus inferred from the falsity of the affidavit upon which the arrest was procured. *Navarino v. Dudrap*, 66 *N. J. L.* 620 (*E. & A.* 1901). It should be noted here that the grand jury indictment is not subject to collateral attack, since an indictment on its face is presumed to be valid, *State v. Bruno*, 2 *N. J. Misc.* 274 (*Sup. Ct.* 1924), and must be attacked directly in the court to which it was returned.

The complaint which is attacked in this action charged criminal libel. The remedy for criminal libel is a much more extensive remedy than the civil one, since a libel may be indictable though it is not actionable. 1 *Odgers on Slander* *422. In an alleged libel such as we have here, in addition to its tendency to create animosity and to disturb the public peace, any such libel is indictable because of the tendency of the defamatory words or language to bring the Constitution and the government in general into public contempt. 3 *Chitty Criminal Law* *867. Such words, if untrue, obviously exceed the limits of fair comment and criticism of the government which is the right of every free man.

As prosecutor of the pleas, Mr. Winne had certain well-defined duties to enforce the criminal law. *State v. Winne*, 12 *N. J.* 152 (1953). But as an individual he has the same

constitutional rights and protection as any other citizen and has the right to the equal protection of the law. If the crime here involved a direct physical injury to his person, no one would question his right to criminal redress, and the fact that the alleged crime here arose in the vehemence of a political campaign should not obscure this fundamental distinction between his official duty and his private rights. The alleged libel, if true, closely approximates a charge of criminal malfeasance. *Cf. State v. Jefferson*, 88 *N. J. L.* 447 (*Sup. Ct.* 1916), affirmed 90 *N. J. L.* 507 (*E. & A.* 1917).

We would observe that under the circumstances it would have been more politic if the matter had been referred to the Attorney-General who had the power to present to the grand jury the alleged criminal libel of a state officer. This was not done and we must take the situation as we find it.

The prosecutor of the pleas and his assistants are charged with the obligation to act in due accordance with the law in the discharge of their public duties, particularly by initiating such a proceeding by filing a complaint in a proper manner as established by the prevailing practice. The mere fact that their private rights have been invaded permits no deviation based upon personal predilection or gain. They have the benefit of the presumption that they act legally in the discharge of their public duty, but if the presumption is overcome by convincing proof that they acted in excess of and distinct from their required official duty for personal reasons of their own, then for such acts they are civilly liable. It is only such acts which are redressable in actions for malicious prosecution and malicious abuse of process.

The essence of an action for malicious prosecution is that the proceeding was instituted without probable cause, that the complainant was actuated by a malicious motive in making the charge. *Shoemaker v. Shoemaker*, 11 *N. J. Super.* 471 (*App. Div.* 1951); *Lakutis v. Greenwood, supra.* Malice may be inferred, however, from a lack of probable cause. *Hammill v. Mack International Motor Truck Corp.*, 104 *N. J. L.* 551, 553 (*E. & A.* 1928). Further, the criminal proceeding must be terminated in his favor and the rule is

that the plaintiff must adduce affirmative proof, in addition to the proof of the termination of the proceeding in his favor, tending to show the falsity of or want of probable cause for the charge laid against him, or that the defendant did not honestly believe in his guilt, *Shoemaker v. Shoemaker, supra,* 11 *N. J. Super.,* at *page* 478.

In the action for malicious abuse of process as distinguished from malicious prosecution it is not necessary to allege or prove that the action in which the process was used terminated favorably to the plaintiff. *Ash v. Cohn, supra.* But it is alleged and there is some proof before this court that after several meetings, including those with intermediaries, a retraction of the alleged libelous statement was obtained on the agreement that the indictment for criminal libel would be *nolle prossed* in 30 days. Presumably the defendant will contend that this was a voluntary arrangement but on the other hand the plaintiff contends that the retraction was given under duress. This conflict presents a question of fact which can only be determined by a jury because it goes to the very essence of an action for malicious abuse of process which lies for the improper, unwarranted and perverted use of process after it has been issued, since the malicious abuse of process is the employment of a process in a manner not contemplated by law, *Ash v. Cohn, supra.*

As to the two counts for conspiracy based upon malicious prosecution and malicious abuse of process, the general rule is that a conspiracy cannot be made the subject of a civil action unless something is done which, without the conspiracy, would give a right of action. The damage is the essence of the action, not the conspiracy. The law is completely expounded in *Louis Kamm, Inc. v. Flink,* 113 *N. J. L.* 582, 592 *et seq. (E. & A.* 1934) ; *Mayflower Industries v. Thor Corp.,* 15 *N. J. Super.* 139, 151 (*Ch. Div.* 1951), affirmed 9 *N. J.* 605 (1952) ; *Cabakov v. Thatcher, supra.*

The judgment of the trial court as to the first and fourth counts relating to false arrest and imprisonment is affirmed and the counts dismissed. The judgment of the trial court

with respect to the counts for malicious prosecution and malicious abuse of process and the two conspiracy counts relating thereto is reversed and the cause remanded for trial of the issues of fact in accordance with the views expressed in this opinion.

*For modification*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*Opposed*—None.