150 N.J. Super. 360 (1977)
375 A.2d 1195
LESLIE ZALEWSKI AND BARBARA ZALEWSKI, HIS WIFE, PLAINTIFFS-RESPONDENTS,
v.
THOMAS GALLAGHER, TOWN OF IRVINGTON, A MUNICIPAL CORPORATION OF THE COUNTY OF ESSEX, NEW JERSEY, AND EDWARD J. OLEKSIK, POLICE CHIEF OF THE TOWN OF IRVINGTON, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted April 18, 1977.
Decided May 20, 1977.
*365 Before Judges FRITZ, ARD and PRESSLER.
Messrs. McDermott & McGee, attorneys for appellants (Mr. Kenneth J. Fost, on the brief).
Messrs. Noonan & Flynn, attorneys for respondents (Messrs. Herman W. Kapp and Richard M. Eaton, on the brief).
PER CURIAM.
Plaintiff Leslie Zalewski (Leslie) filed a complaint against defendant Gallagher, a police officer employed by the Town of Irvington. Also named as defendants were the township and its police chief. The complaint alleged that Gallagher had wrongfully committed an assault and battery against plaintiff and also charged Gallagher with malicious prosecution and false arrest. Leslie's wife, Barbara, sought damages for loss of consortium arising out of each of her husband's causes of action.
A jury returned the following verdicts in favor of Leslie: (1) $2,305 for assault and battery against defendants Gallagher and the Town of Irvington; (2) $2,500 in compensatory damages for malicious prosecution against Gallagher alone; (3) $3,000 in punitive damages for malicious prosecution against Gallagher, and (4) $5,000 in punitive damages for false arrest against Gallagher (no compensatory damages were awarded for false arrest).
The jury awarded Barbara two separate awards for loss of consortium: (1) $2,500 on the assault and battery cause, and (2) $2,500 for the malicious prosecution. The judge *366 directed that interest be awarded on each verdict. The actions were dismissed against the chief of police.
On appeal defendants contend: (1) the malicious prosecution action should have been dismissed by the judge because a grand jury had indicted Leslie, thereby establishing a presumption of probable cause which plaintiffs did not overcome in this action; (2) if the malicious prosecution action was properly submitted to the jury the judge erred in not charging the jury that the presumption raised by the indictment could be overcome only by "convincing proof"; (3) it was error to permit Barbara to recover twice for loss of consortium; (4) punitive damages should not have been permitted for false arrest since there were no compensatory damages on that count; (5) it was error for the judge to refuse to charge the jury that an officer could use deadly force to effect a lawful arrest; (6) the judge erroneously refused to charge the jury on the elements of the crime with which defendant Gallagher had charged plaintiff; (7) it was error to permit interest on punitive damages; (8) Gallagher was immune from civil liability from malicious prosecution because he was a police officer; (9) it was error to hold defendant Town of Irvingtion liable under the theory of respondeat superior, and (10) the verdicts were excessive and against the weight of the evidence.
A brief review of the facts is necessary. Plaintiff Leslie was in a confectionery store when defendant Gallagher entered and recognized plaintiff. The facts are sharply in dispute as to what occurred between the two men. Leslie testified that Gallagher began to insult him, reminding Leslie that he had arrested him in the past. He then assaulted Leslie, dragged him from the store, arrested him and charged him with assaulting a police officer. A grand jury indicted Leslie on that charge but he was later acquitted.
Gallagher's version was different: he claimed that Leslie had tripped and insulted him, then started a fight. Leslie *367 allegedly grabbed Gallagher's gun from his belt and struck Gallagher with it, threatening to kill him.
Defendant Gallagher maintains on appeal that the grand jury's indictment of Leslie establishes presumptive evidence that Gallagher had probable cause to prosecute him. He also says that such a presumption was not overcome by plaintiff and that the judge should therefore have dismissed the malicious prosecution action as a matter of law since plaintiff failed to prove one of its essential elements, i.e., lack of probable cause in the institution of the criminal action. Lind v. Schmid, 67 N.J. 255, 262-263 (1975).
The court in Lind dealt with a municipal conviction and held the presumption was rebuttable. In the instant case we deal with the effect of a grand jury indictment on the question of probable cause. Although the precise question is a novel one in this State, our courts have held that the action of a municipal judge in holding over a defendant for grand jury action constitutes no more than prima facie evidence of probable cause. Galafaro v. Kuenstler, 53 N.J. Super. 379, 385 (App. Div. 1958). Moreover, Galafaro went on to say that although evidence of a grand jury's action in refusing to indict is not conclusive on the issue of lack of probable cause, it is evidence to be considered by the jury along with other evidence in the case in considering the question of whether plaintiff has proved this element of the cause of action, i.e., that probable cause did not exist. We are satisfied the converse is also true with respect to the effect of grand jury action in handing up an indictment. Again, it is evidence to be considered with all other evidence in the case on the question of whether defendant acted with probable cause. Such evidence may be enough to exculpate a person defending a malicious prosecution action brought by a person indicted until that person has proved some fact other than his acquittal from which malice or lack of probable cause might be inferred. The effect of such grand jury action is best stated in a quotation from Prosser on Torts (2nd ed. 1955), *368 "Malicious Prosecution," § 98 at 657, contained in Galafaro v. Kuenstler, supra:
* * * where the accused is committed or held to bail by a magistrate, or indicted by the grand jury, it is evidence that there was probable cause for the prosecution. It is very often said that this establishes a `prima facie' case; but since the plaintiff has the burden of proving lack of probable cause in any case, and is free to do so, this apparently means nothing more than that the commitment is important evidence on the issue. [53 N.J. Super. at 385]
Additionally, a majority of the jurisdictions which have ruled on the issue have determined that the returning of an indictment is no more than prima facie or presumptive evidence that defendant has probable cause to prosecute. See "Malicious Prosecution: Effect of Grand Jury Indictment on Issue of Probable Cause," 28 A.L.R. 3rd 748, 753-754 (1969), and cases cited therein.
In this case the evidence introduced on the issue of probable cause was sharply contested. It cannot be said, as defendant maintains, that the judge should have ruled as a matter of law that the presumption raised by the indictment had not been overcome by plaintiffs. When the facts relating to probable cause are in dispute, the issue must be resolved by the jury on adequate instructions from the court. Lind v. Schmid, supra 67 N.J. at 266. Since the facts here were so sharply contested, the judge properly declined to rule that the presumption had not, as a matter of law, been overcome.
Moreover, his jury charge was correct. He told the jurors that the indictment was "evidence of probable cause." Defendants argue that he should have instructed the jury that the indictment raised a presumption that probable cause existed. They also say that he should have charged that that presumption could only be overcome by "convincing proof."
There was no error in the charge. The presumption was not in itself evidence. It ceased to be a factor in the case once countervailing evidence had been introduced. For that *369 reason it would have been wrong to tell the jury that it existed. It had no probative force; it was to be used only for the trial judge to determine whether the evidence was sufficient to withstand a motion for an involuntary dismissal. In re Blake's Will, 21 N.J. 50, 58-59 (1956); Flanagan v. Equitable Life Assur. Soc. of U.S., 14 N.J. 309, 312-313 (1954); Kirschbaum v. Metropolitan Life Ins. Co., 133 N.J.L. 5, 8-9 (E. & A. 1945); Dunn v. Goldman, 111 N.J.L. 249, 251-252 (Sup. Ct. 1933).
Furthermore, the presumption need not be overcome by "convincing proof" but only by a preponderance of the evidence. Earl v. Winne, 14 N.J. 119, 134 (1953), cited by defendants, requires no heavier burden to overcome the presumption and we have found no other authority which imposes such a requirement.
Nor was there error in permitting $5,000 in punitive damages for false imprisonment although the jury granted no compensatory damages on that ground. It has been held that punitive damages alone may be awarded for false imprisonment. Barber v. Hohl, 40 N.J. Super. 526, 534 (App. Div. 1956). Moreover, the evidence supporting the assault and battery here was not identical with that supporting the false arrest so that plaintiff did not receive punitive damages twice for the same acts.
The judge did not err in two other aspects of the jury charge treated by defendants on appeal. It was unnecessary to tell the jury that a police officer may kill if necessary when he meets resistance in a lawful arrest. The issue of an officer's right to kill was simply not in the case and the charge as given was adequate. Moreover, while the judge did not specifically define each element of the crime with which defendant had charged plaintiff (assault and battery on a police officer), we find no reversible error. In another part of the jury charge, he did instruct on the elements of assault and battery. We think that in the context of the charge as a whole the jury could have determined whether *370 defendant Gallagher had reasonable cause to prosecute plaintiff for assault and battery on a police officer.
Defendant Gallagher maintains that he should have judicial immunity from civil liability for malicious prosecution because he is a police officer. While it is true that New Jersey recognizes that an action is not cognizable against a judicial officer for an error in judgment, however prejudicial to a person, such error may be, the court in Earl v. Winne, supra, 14 N.J. 119 (1953) stated:
Contrariwise, magistrates and police inspectors, police captains and probation officers have been civilly held liable in this state for false arrest and malicious prosecution, where they acted without color of legal authority. Grove v. Van Duyn, 44 N.J.L. 654 (E. & A. 1882); Shaefer v. Smith, 92 N.J.L. 267 (Sup. Ct. 1919); Collins v. Cody, 95 N.J.L. 65 (Sup. Ct. 1920); Lakutis v. Greenwood, [Lakutis v. Greenwood, 9 N.J. 101] supra. [at 132]
Further on in Earl, in analyzing the cause of action for malicious prosecution, the court defines it as follows:
The essence of an action for malicious prosecution is that the proceeding was instituted without probable cause, that the complainant was actuated by a malicious motive in making the charge. * * * [at 134]
While the court in Earl was dealing with the question of immunity or lack of immunity as it effected the prosecutor and his assistants, we deem the court's determination to be equally appropriate with respect to police officers. Where their action is demonstrated to be "in excess of and distinct from their required official duty for personal reasons of their own, then for such acts they are civilly liable." Earl v. Winne, supra at 134.
Much later, our Supreme Court in Cashen v. Spann, 66 N.J. 541 (1975), cert. den. 423 U.S. 829, 96 S.Ct. 48, 46 L.Ed.2d 46 (1975) reaffirmed this principle.
* * * Thus it is clear that New Jersey case law to date has not equated prosecutorial immunity with its judicial counterpart and reflects *371 the philosophy that there are indeed circumstances in which a prosecutor will incur civil liability for his official conduct. We wish to make it clear that we believe that this is the preferable approach to future problems involving the civil immunity of prosecutors in this State. The public interest is best served by recognizing that prosecutors enjoy only a limited form of immunity. [at 551]
We discern no viable basis for granting a police officer greater immunity from civil liability for malicious prosecution than the prosecutor of the pleas or his assistants.
This jury specifically found that Gallagher had used excessive force in arresting Leslie and in overcoming Leslie's resistance to that arrest. He had committed an assault and battery, and the jury found that he had acted with malice in the false arrest which followed. Undoubtedly, the jury concluded that he acted out of personal motive and with malicious intent in his prosecution of Leslie, so that even limited immunity for police officers would not help him here.
The jury also found that Gallagher had acted within the scope of his employment when he committed the assault and battery. On appeal the township argues that that finding is insupportable as a matter of law because the jury found that Gallagher had acted with malice in the assault and battery, hence, ceasing to act as the servant of his employer. Snell v. Murray, 121 N.J. Super. 215, 216 (App. Div. 1972). But the jury did not find malice in the assault and battery so that it was not necessary to dismiss the case as to Irvington as a matter of law.
We find that the verdicts, while generous, were not so excessive as to shock the conscience of the court. Taweel v. Starn's Shoprite Supermarket, 58 N.J. 227, 236 (1971). Nor, though we need not consider the issue since it was not raised at the new trial motion (R. 2:10-1), were the verdicts against the weight of the evidence.
We do find error in the award of two separate verdicts to plaintiff wife for loss of consortium, one arising from the assault and battery and one from the malicious prosecution. Although the evidence supports findings that *372 Barbara had suffered damages as a result of the separate wrongs to her husband, the record indicates that these wrongs occurred concurrently and therefore warranted only one verdict as to the per quod count. A wife is entitled to the services of her husband in attending to his household duties, to his companionship and comfort and to his consortium, that is, marital relations with him. She is entitled to fair and reasonable compensation for any loss or impairment of her husband's services, society or consortium because of injuries sustained by him as a proximate result of defendant's wrongdoing. Ekalo v. Constructive Serv. Corp. of America, 46 N.J. 82 (1965). However, when the acts of wrongdoing by defendant occur concurrently, as in this case, the wife is entitled to only one award (even though each wrong involves a separate cause of action which would support its own per quod count). The wife's injury consisted of the loss of her husband's services for one continuing time period. To allow her to recover twice for this period of time would violate the self-evident principle that there should only be one satisfaction for a wrong when dealing with compensatory damages. To require defendant to be doubly liable for the same injury would be to unjustly enrich the wife. See Theobald v. Angelos, 44 N.J. 228, 239 (1965). The basis of the award is not the number of torts committed by defendant against her spouse but rather the total amount of deprivation of her spouse's services. Unfortunately the record below is ambiguous with respect to the amount of damages the jury intended to award Barbara Zalewski. In taking the verdict the trial judge inquired of the foreman:
THE COURT: * * * [D]id you intend for her to have an award of  in the total sum of $5,000 for her loss of consortium for all of the claims that she is making or total sum of $2,500 for her loss of consortium? Do you understand my question, Mr. Farlin?
THE FOREMAN: Yes.
THE COURT: Can you answer it now or do you wish to go back and deliberate further so that you can answer?
A JUROR: It was in each case.
*373 THE COURT: I gather from Mr. Jones that she was to be awarded $2,500 in each of the cases that you awarded her consortium so that she would receive a total of $5,000, is that correct?
A JUROR: Yes, your Honor.
THE COURT: I would like to have number one answer me.
Mr. Farlin, is that correct?
THE FOREMAN: What, the $5,000?
THE COURT: That she would get $5,000. In other words, $2,500 on each of the two claims that you found for her in the amount of $5,000 for loss of consortium.
THE FOREMAN: Yes.
The jury was then polled, and all jurors answered in the affirmative.
Notwithstanding the judge's inquiry, we are still in doubt as to whether the jury was of a mind to award Barbara a total of $5,000 for her loss of consortium or felt that her entire loss amounted to $2,500, which entitled her to $5,000 in light of the separate counts for each tort. Consequently the matter is remanded for a new trial on the issue of per quod damages only.
We note one other error. The judge erroneously permitted interest on the punitive damages awards. It has recently been held that prejudgment interest on punitive damages should not be permitted. Belinski v. Goodman, 139 N.J. Super. 351, 359 (App. Div. 1976); R. 4:42-11(b).
The judgment in behalf of Leslie Zalewski should be modified and as so modified is affirmed.
The judgment as to Barbara Zalewski is reversed and remanded for a new trial.