Brian ADAMS, Plaintiff,

v.

CITY OF CAMDEN, et al., Defendants.

Civil Action No. 05–779 (JBS).

United States District Court,
D. New Jersey.

Nov. 8, 2006.

Jeffrey M. Thiel, Esq., Steven M. Petrillo, Esq., Petrillo & Goldberg, P.C., Pennsauken, NJ, for Plaintiff.

Felix P. Gonzalez, Esq., Mark V. Maguire, Esq., Office of the Camden City Attorney, Camden, NJ, for Defendants City of Camden and City of Camden Police Department.

Ralph Raymond Kramer, Esq., Haddon Heights, NJ, for Defendant Luis Acetti.

## OPINION

SIMANDLE, District Judge.

This matter comes before the Court on the motion of two defendants, the City of Camden and the Camden Police Department, for summary judgment pursuant to Fed.R.Civ.P. 56 [Docket Item 14]. For the reasons explained below, the Court will grant the motion in part and deny the motion in part.

## I. BACKGROUND

The facts as set forth here are those viewed in the light most favorable to the non-moving party, Plaintiff Brian Adams. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Plaintiff is a forty-nine year-old man who lives in the City of Camden and has epilepsy—which causes him to suffer seizures, memory loss and periods of confusion—and ataxia [1]—which causes him to walk with an unsteady gait and to fall often and for which he compensates by walking with a cane. (Pl.'s Medical Records in Pl.'s Exs. D, E, F, G and H); (Adams Dep. Tr. at 59, 72–73, 77 in Pl.'s Ex. I). On January 29, 2003, Camden City police officers, including Defendant Luis Acetti, tackled, beat and arrested Plaintiff for creating a public disturbance when Plaintiff was having an epileptic seizure. Plaintiff was not a physical threat to passersby and he had complied with Officer Acetti's requests to stop waving his cane in the air and cursing. (Acetti Dep. Tr. at 23 in Pl.'s Ex. C.)

On the date of his arrest, Plaintiff was walking from his mother's house to his own house, both in Camden, to take his scheduled dosage of epilepsy medication. (Adams Dep. Tr. at 39.) Plaintiff was talking with an acquaintance he met on the way and was leaning on a car for support when two plainclothes officers approached him and began questioning him about a shooting in the area, about which he had no knowledge. (*Id.* at 39, 53–54, 59–61, 63.) He explained this to the officers and that he wanted to go home to get his medicine, but they blocked his egress and continued asking questions. (*Id.* at 39, 60.)

Plaintiff informed them repeatedly that he had to go home to take medication, but they wouldn't let him pass. (*Id.* at 39, 53–54.) At some point Plaintiff began having a seizure. (*Id.* at 65.)

Plaintiff does not recall much of what happened next, although he testified at his deposition that he remembers the plainclothes officers calling over approximately five uniformed Camden police officers to arrest him. (*Id.* at 64, 66; Acetti Dep. Tr. at 28–29.) By that point, Plaintiff was having a seizure and the uniformed officers were aggressively wrestling him to the ground and handcuffing him. (Adams Dep. Tr. at 65.) One officer kneed him in the back, (*id.* at 67), another sprayed mace in his face, (*id.* at 68), and a few officers beat him with their clubs, (*id.* at 80). Then the officers put him in a police car to drive him to jail; however, when he became aware of his surroundings he was in Cooper Hospital. (*Id.* at 70–72).

After the incident, Plaintiff's hands swelled because the handcuffs were so tight; his neck, back and shoulder were sore; and his shins were bruised from the officers beating him with clubs. (*Id.* at 79–81). Officer Acetti was the principal officer who arrested Plaintiff, put him in a police car intending to take him to the police station, and then drove him to the hospital. (Acetti Dep. Tr. at 27, 30–31). Prior to the arrest, Officer Acetti had asked Plaintiff, who was behaving bizarrely, to stop his behavior or else he would get a summons for disorderly conduct. (*Id.* at 23.) According to Mr. Acetti, Plaintiff complied with this request and began walking away when the officers attacked him. (*Id.*)

---

1. "An inability to coordinate muscle activity during voluntary movement; most often due to disorders of the cerebellum or the posterior columns of the spinal cord; may involve the limbs, head, or trunk." *Stedman's Medical Dictionary* (27th ed.2002)(available on Westlaw).

## II. MOTION FOR SUMMARY JUDGMENT

### A. Summary Judgment Standard

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999) (quoting *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. 2505). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Liberty Lobby*, 477 U.S. at 250, 106 S.Ct. 2505; *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 329–30 (3d Cir.1995) (citation omitted).

However, summary judgment may be appropriate when the nonmoving party merely rests on its pleadings.

> Although entitled to the benefit of all justifiable inferences from the evidence, the nonmoving party may not, in the face of a showing of a lack of a genuine issue, withstand summary judgment by resting on mere allegations or denials in the pleadings; rather, that party must set forth "specific facts showing that there is a genuine issue for trial," else summary judgment, "if appropriate," will be entered.

*United States v. Premises Known as 717 S. Woodward St., Allentown, Pa.*, 2 F.3d 529, 533 (3d Cir.1993) (quoting Fed. R.Civ.P. 56(e)) (citations omitted).

### B. Claims Against the Police Department

■ As an initial matter, the Court will grant the motion for summary judgment as to the Camden Police Department, which aspect of the motion Plaintiff does not oppose. In New Jersey a municipal police department is not an entity separate from the municipality, N.J. Stat. Ann. § 40A:14–118 (municipal police department is "an executive and enforcement function of municipal government"); therefore, the Camden Police Department is not a proper defendant in this action, *see McGovern v. Jersey City*, No. 98–CV–5186, 2006 WL 42236 at *7 n.4 (D.N.J. Jan. 6, 2006) (police departments cannot be sued in conjunction with municipalities because police departments are administrative arms of local municipalities, not separate entities), *Padilla v. Twp. of Cherry Hill*, 110 Fed.Appx. 272, 278 (3d Cir.2004) (same), *DeBellis v. Kulp*, 166 F.Supp.2d 255, 264 (E.D.Pa.2001) (same). The Camden Police Department is entitled to judgment as a matter of law and all claims against it are hereby dismissed.

### C. Claims Against the City under 42 U.S.C. § 1983

In Count Three of his Complaint, Plaintiff alleges, among other things, that the City of Camden ("the City" or "Defendant") is liable under 42 U.S.C. § 1983 for willfully and with deliberate indifference violating his rights under the Fourth and Fourteenth Amendments because the police unlawfully detained him, unreasonably seized him, assaulted him, and deprived him of his liberty. (Compl.¶ 17.) The City argues that these claims must be dismissed for lack of evidence. (Def.'s Br. at 9–10.) Specifically, the City claims that Plaintiff did not conduct any discovery on

these issues and will be unable to prove the City's liability for any officer's actions under the requirements set forth in *Monell v. Dep't of Soc. Svcs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Plaintiff opposes and claims—citing no authority—that the conduct of Officer Acetti "is prima facie evidence of the City's deliberate indifference for the training and supervision of its officers." (Pl.'s Br. at 9).

42 U.S.C. § 1983 provides a vehicle for private parties to enforce their Constitutional or other federally-protected rights:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

In *Monell* the U.S. Supreme Court held that municipalities are "among those persons to whom § 1983 applies." 436 U.S. at 690, 98 S.Ct. 2018. However,

> [t]here is no *respondeat superior* theory of municipal liability, so a city may not be held vicariously liable under § 1983 for the actions of its agents. Rather, a municipality may be held liable only if its policy or custom is the "moving force" behind a constitutional violation.

*Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir.2006) (citing *Monell*, 436 U.S. at 691, 98 S.Ct. 2018 and *Bd. of County Comm'rs. v. Brown*, 520 U.S. 397, 400, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)). Thus,

> a plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal "policy" or "custom" that caused the plaintiff's injury. Locating a "policy" ensures that a municipali-

ty is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. Similarly, an act performed pursuant to a "custom" that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.

*Brown*, 520 U.S. at 403–04, 117 S.Ct. 1382 (citations omitted). In other words, "[a] plaintiff must identify the challenged policy, attribute it to the city itself, and show a causal link between execution of the policy and the injury suffered." *Losch v. Parkesburg*, 736 F.2d 903, 910 (3d Cir.1984).

■ Further, in order to succeed on claims related to the City's supervision, training or hiring of Officer Acetti, Plaintiff would have to prove that the City acted with deliberate indifference to the known or obvious consequences of its acts or its failure to act. *Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). "A showing of simple or even heightened negligence will not suffice." *Brown*, 520 U.S. at 407, 117 S.Ct. 1382.

■ The Court will grant the summary judgment motion as to Plaintiff's § 1983 claims against the City for inadequate training or supervision of Officer Acetti and other police officers because Plaintiff has not identified any policy or custom that would establish the City's conscious disregard for constitutional rights. Because § 1983 does not impose *respondeat superior* liability on municipalities, the Supreme Court has explained that when a plaintiff accuses a municipality of inadequately training its officers, the plaintiff must show the municipality's deliberate indifference by (1) identifying the deficient

municipal training program or policy, or (2) showing a pattern of constitutional violations as to which the municipality has disregarded its obligations to remedy such misconduct:

[The Supreme Court] concluded in *Canton* that an "inadequate training" claim could be the basis for § 1983 liability in "limited circumstances." [489 U.S.] at 387, 109 S.Ct. 1197. [The Court] spoke, however, of a deficient training "program," necessarily intended to apply over time to multiple employees. *Id.*, at 390, 109 S.Ct. 1197. Existence of a "program" makes proof of fault and causation at least possible in an inadequate training case. If a program does not prevent constitutional violations, municipal decisionmakers may eventually be put on notice that a new program is called for. Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the "deliberate indifference"—necessary to trigger municipal liability. *Id.*, at 390, n. 10, 109 S.Ct. 1197 ("It could ... be that the police, in exercising their discretion, so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers, who, nevertheless, are 'deliberately indifferent' to the need"); *id.*, at 397, 109 S.Ct. 1197 (O'CONNOR, J., concurring in part and dissenting in part) ("Municipal liability for failure to train may be proper where it can be shown that policymakers were aware of, and acquiesced in, a pattern of constitutional violations ..."). In addition, the existence of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident, is the "moving force" behind the plaintiff's injury. *See Id.*, at 390–391, 109 S.Ct. 1197.

*Brown,* 520 U.S. at 407–08, 117 S.Ct. 1382. Plaintiff has made no allegation and presented no evidence of any municipal program or widespread custom of police training or supervision. Nor has Plaintiff alleged or shown how any failure to train Camden police officers resulted in any injury to him. In this situation, a reasonable jury could not infer that the City was deliberately indifferent to Plaintiff's federally protected rights; the City is entitled to judgment as a matter of law on Plaintiff's training and supervision claims under § 1983.

█ The Court will also grant the City's motion as to Plaintiff's claims under § 1983 for the hiring of Officer Acetti. Plaintiff has not alleged any facts in Officer Acetti's background that would permit a jury to find that the obvious consequence of hiring him would be a violation of the specific rights allegedly violated here.

[Under § 1983, a] plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision. Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute "deliberate indifference."

[A] finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury. Rather, it must depend on a finding that this offi-

cer was highly likely to inflict the particular injury suffered by the plaintiff. The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong.

*Brown,* 520 U.S. at 411–12, 117 S.Ct. 1382.

The Court may not permit these § 1983 claims to go forward against the City on Plaintiff's argument that "this incident would not have occurred were it not for the negligent training [and hiring] of Officer Acetti and the City's obvious failure to supervise him...." (Pl's Br. at 10.) This theory of causation is not sufficient to support municipal liability under 42 U.S.C. § 1983. As the Supreme Court has said,

> [e]very injury suffered at the hands of a municipal employee can be traced to a hiring decision in [this] "but-for" sense: But for the municipality's decision to hire the employee, the plaintiff would not have suffered the injury. To prevent municipal liability for a hiring decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged.

*Brown,* 520 U.S. at 410, 117 S.Ct. 1382. Plaintiff failed to provide any basis for a jury to find such a link. Therefore, the § 1983 claim against the City for negligent hiring also fails as a matter of law.[2]

### D. State Law Claims Against the City

#### 1. *Negligent Hiring*

■ In Count Four of the Complaint, Plaintiff claims that the City is liable in tort under New Jersey law for negligently hiring, training and supervising Officer Acetti. (Compl.¶ 22.) The City argues that the Court must dismiss Plaintiff's negligent hiring claim because Plaintiff has no evidence that prior to Officer Acetti's hiring he displayed any incompetence or dangerousness. The City also points out that Plaintiff has not acquired evidence regarding the City's hiring practices. (Def.'s Br. at .11–12.) Plaintiff's brief opposing the motion to dismiss does not appear to address this issue.

■ In New Jersey,

the tort of negligent hiring has as its constituent elements two fundamental requirements. The first involves the knowledge of the employer and foreseeability of harm to third persons. An employer will only be held responsible for the torts of its employees beyond the scope of the employment where it knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons. The second required showing is that, through the negligence of the employer in hiring the employee, the latter's incompetence, unfitness or dangerous characteristics proximately caused the injury.

*Di Cosala v. Kay,* 91 N.J. 159, 173–74, 450 A.2d 508 (1982) (citations omitted).

Plaintiff has not come forward with any information regarding these fundamental requirements. Nothing in the record before the Court indicates that Officer Acetti or any of the other officers involved in this incident displayed any unfitness prior to their hiring; nor has Plaintiff informed the Court of the City's screening practices. Therefore, the Court will grant the motion

---

**2.** Similarly, Plaintiff's failure to bring forward any evidence of the City's negligent training or supervision of its officers entitles the City to summary judgment on the Plaintiff's state law claims for negligent training and supervision.

for summary judgment as to Plaintiff's claim against the City for negligent hiring.

### 2. *False Arrest & Imprisonment*

In Count One of the Complaint, Plaintiff claims that the City, Officer Acetti and other Camden police officers violated the U.S. and New Jersey Constitutions and other New Jersey laws by falsely arresting and imprisoning him without probable cause. (Compl.¶¶ 7–9.) Defendant claims that Plaintiff's claim for false arrest and imprisonment against the City arising under New Jersey law should be dismissed because Plaintiff alleges Officer Acetti's misconduct was willful or wanton and the New Jersey Tort Claims Act, N.J. Stat. Ann. § 59:2–10, provides municipalities with immunity for the willful misconduct of its employees. (Def.'s Br. at 10–11.) Plaintiff opposes and notes that, in general, the City is responsible for the injuries caused by its employees when those employees act within the scope of their employment. (Pl.'s Br. at 10–11) (quoting N.J. Stat. Ann. § 59:2–2).

Both parties' arguments miss the mark. The New Jersey Tort Claims Act permits false arrest and imprisonment actions against municipalities under the *respondeat superior* theory so long as the municipal employee was acting in the scope of employment and without "willful misconduct." *See* N.J. Stat. Ann. §§ 59:2–2a, –10. Under N.J. Stat. Ann. § 59:2–2a:

> A public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances.

However, under N.J. Stat. Ann. § 59:2–10:

> A public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct.[3]

 Thus, the Tort Claims Act prohibits an action against a municipality when its municipal police officer falsely arrests or imprisons someone only if the officer was acting outside the scope of employment or acted with willful misconduct. Because these torts do not require that the officer had any particular state of mind, there is no *per se* ban on this action against the municipality. For false arrest, "[t]he essential thing is the constraint of the person," *Earl v. Winne*, 14 N.J. 119, 127, 101 A.2d 535 (1953), while "[t]he gist of false imprisonment is merely unlawful detention without more," *id.* at 128, 101 A.2d 535. It is possible for the City to be liable if Officer Acetti or the officers did not act with willful misconduct.

The City argues that Plaintiff alleges only that the officers acted with wilful misconduct. The Court disagrees. Plaintiff alleges that the officers "at all times material hereto were acting within the scope of their employment," (Compl.¶ 5), when they "unlawfully detain[ed] Brian Adams, in violation of . . . the Constitution or other laws of the State of New Jersey," (Compl.¶ 7). A liberal reading of the complaint requires this Court to find that the

---

3. Although the Act further provides that the "public entity is not liable for an injury resulting from an act or omission of a public employee where the public employee is not liable," N.J. Stat. Ann. § 59:2–2b, and in general the employee is not liable when acting in good faith, N.J. Stat. Ann. § 59:3–3, this good faith immunity does not apply to claims for false arrest or imprisonment:

> A public employee is not liable if he acts in good faith in the execution or enforcement of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment.

N.J. Stat. Ann. § 59:3–3.

alleged "unlawful" actions of Officer Acetti could fall somewhere in the zone between good faith and wilful misconduct. The fact that elsewhere in the Complaint Plaintiff has alleged Officer Acetti acted with wilful misconduct does not doom this claim; the Federal Rules of Civil Procedure permit a party to set forth multiple alternate claims. Fed.R.Civ.P. 8(e)(2).

■ Thus, there is a genuine issue of fact as to Officer Acetti's state of mind when he detained and arrested Plaintiff. The issue of the City's liability for any false arrest or imprisonment under the New Jersey Tort Claims Act cannot be decided as a matter of law and the Court will not bar these claims.

### E. John Doe Defendants

■ Pursuant to Federal Rule of Civil Procedure 21, "parties may be dropped ... by order of the court ... of its own initiative at any stage of the action and on such terms as are just." Fed.R.Civ.P. 21. District Courts in the Third Circuit have used this Rule to exclude John Doe parties from an action when appropriate. *See, e.g., Hightower v. Roman, Inc.*, 190 F.Supp.2d 740, 754 (D.N.J.2002); *Atlantic Used Auto Parts v. City of Philadelphia*, 957 F.Supp. 622, 625 (E.D.Pa.1997) ("fictitious party names may be used 'at least until reasonable discovery permits the actual defendants to assume their places ...', however, ... '[f]ictitious names must eventually be dismissed, if discovery yields no identities.'" (citations omitted)). In this case, the Court will similarly use its discretion under Rule 21 to dismiss all John Doe defendants from this action. After a year of discovery and motion practice, Plaintiff has failed to identify these defendants or provide any evidence of their liability for the claims raised in the Complaint. It is appropriate, before proceeding to trial, to eliminate these ficti-tious defendants from this action under Fed.R.Civ.P. 21.

## III. CONCLUSION

For the foregoing reasons, the Court will grant Defendant's summary judgment motion in part and deny it in part. Consistent with this opinion, Plaintiff's Complaint alleges the following remaining claims: a claim under New Jersey law against the City and Officer Acetti for false arrest and false imprisonment; a claim under New Jersey law against Officer Acetti for assault; and a § 1983 claim against Officer Acetti as described in ¶¶ 17–19 of the Complaint, for unlawful arrest, unreasonable seizure, and violation of other of Plaintiff's federal Constitutional rights.

The accompanying Order will be entered.