PHILADELPHIA TRUST, SAFE DEPOSIT AND INSURANCE COMPANY, trustee, et al.

*v.*

THE MAYOR AND COUNCIL OF THE BOROUGH OF MERCHANTVILLE.

[Decided March 30th, 1908.]

1. Land includes the water upon it, and when the fee to land is acquired by condemnation everything which in the legal sense is comprehended in the term land, including water, vests in the *expropriator.*

2. When land, which has water upon it, is condemned, the law gives as compensation to the owner the value of the land, including the value of the water; that is, if the value of the land is commercially enhanced by the presence of the water either in the immediate present or in reasonable anticipation in the near future, the benefit of it is given to the owner.

3. Where an action at law is pending, relief by bill in equity concerning the same subject-matter should only be auxiliary to the action at law, and questions of a legal character which have been or may be decided in that action should not be reviewed.

4. Where a motion for a preliminary injunction is denied, and it appears that the court is without jurisdiction to grant the relief prayed, or that the bill itself is absolutely and palpably lacking in equity, the bill may be dismissed, although no demurrer has been filed thereto, nor any notice given of a motion to dismiss under rule 213 of this court.

On supplemental bill and order to show cause and affidavits.

*Mr. Herbert A. Drake,* for the complainants.

*Mr. William Early* and *Mr. Howard Carrow,* for the defendant.

WALKER, V. C.

Upon filing the original bill an order to show cause was made why an injunction should not issue restraining the defendant from proceeding with its application for the appointment of commissioners for the condemnation of lands upon which it was proposed to build and construct a sewage disposal plant and from discharging refuse from any sewage disposal works into, or so as to injure, the water of Cherry run, a stream flowing through the lands of the complainants proposed to be condemned. The matter being heard upon the bill, order to show cause and affidavits, before Vice-Chancellor Bergen, he filed conclusions in which he observed, among other things: "It has, however, been urged, that beyond the question of the appointment of the commissioners, what the borough proposes to do in the condemnation and after it has secured the lands, is to so use these lands as to create a nuisance injurious to the adjoining landowners, and to pollute the stream of water which the complainants say they use, and have used for a great many years, for domestic purposes. The answer to that, it seems to me, is this: We must presume that the commissioners in condemning these lands, and providing for compensation, will take all the matters into consideration likely to injuriously affect the remaining land. If they do not, then the complainants, or the landowners, would have their remedy at law." The order to show cause was discharged and the complainants then *certioraried* the condemnation proceedings into the supreme court, where, upon hearing, the *certiorari* was

dismissed. This judgment has been removed into the court of errors and appeals by writ of error.

The complainants have now, by leave of the court, filed a bill of complaint supplemental to and amendatory of the original bill, in which they set forth that the land sought to be condemned is favorably situated for development as a residential tract, and that it may be beautified by the making of an artificial lake by damming Cherry run, into which they say that sewage and effluent will be emptied from the proposed disposal works. An order to show cause was made upon the filing of the supplemental bill, and the matter now comes on to be heard upon that bill, the order to show cause, and affidavits.

Upon the argument of the matter now in hand, counsel for complainants urged that the taking sought under the condemnation proceedings was a taking of water and not of land, and that the defendant is powerless to condemn water. This contention, in my judgment, is not sound.

Land, as I understand it, includes water, and this understanding seems to be supported by abundant authority. The word "land," when used in a deed, includes not only the naked earth, but everything within it, and the buildings, trees, fixtures, fences, stones, minerals, water and herbage upon it. *18 Am. & Eng. Encycl. L.* (*2d ed.*) *141.* The word "land" is comprehensive in its import, and includes many things besides the earth we tread on, as water, grass, buildings, fences, trees and the like, for all these may be conveyed by the general designation of land. *Words and Phrases, vol. 5 tit. Land p. 3976.*

The contention of counsel, broadly stated, is, that the Condemnation act of 1900 (*P. L. 1900 p. 79*) does not authorize the condemnation of water, and that, therefore, by virtue of proceedings to condemn land, water cannot be taken. The act referred to is one of procedure and practice only. The authority for taking land or other property under the right of eminent domain is derived from other statutes. The authority of the defendant to establish a sewage disposal plant and to acquire lands for the purpose is to be found in section 87 of the Borough act of 1897 (*P. L. 1897 p. 285*), and the supplement thereto of 1903 (*P. L. 1903 p. 393*), just as the right to acquire water or

water rights for the purpose of supplying any city with water is to be found in section 1 of the act of April 1st, 1895 (*P. L. 1895 p. 769; Gen. Stat. p. 1388 § 57*).

Thus it appears that land may be condemned, or water may be condemned, or, for that matter any other species of property may be condemned; but, when land is condemned without qualification, the fee itself, carrying with it all appurtenances, goes to the party acquiring title under the proceedings for that purpose.

When the use of land is transferred by the action of the legislative will, the right to use, for the specified purpose, everything which, in the legal sense, is comprehended in the term land, is transferred. *Taylor* v. *New York and Long Branch Railroad Co., 38 N. J. Law (9 Vr.) 28, 30.* The complainants acquired the property sought to be condemned (including the water) as land, and as land it can be taken away.

While it was held in *Albright* v. *Sussex Co. L. & P. Com., 71 N. J. Law (42 Vr.) 303,* that the right to fish in an inland lake could not be acquired under a grant to the power of eminent domain contained in an act which was declared to be unconstitutional, yet it was said that if the legislature had provided for the condemnation of the lake itself the right to fish would have passed as an incident of the public title. From this it appears that a lake may be condemned for public use. Now, how would it be condemned? Certainly as land, if the fee were to be acquired, for, by taking the land under the water, the water upon the land would pass.

In *Woodcliff* v. *New Jersey, &c., Railroad Co., 72 N. J. Law (43 Vr.) 137,* land lying between high and low-water marks, acquired by a grant of riparian lands, was held to be subject to condemnation under the state's power of eminent domain. The property taken was described as land, and it was partly upland and partly land under the tidewaters of the Hudson river. The supreme court said (at *p. 139*) that it seems impossible, upon principle, to say that such lands (under water) may not be condemned by corporations having the state's right of eminent domain. In *Rand. Em. Dom. § 77*, it is said that the subjection of land, using the word in its common meaning, to the right of eminent domain is so evident that the citation of supporting cases is

334　　CASES IN CHANCERY.

Phila. Trust, &c., Co. *v.* Merchantville.　　74 *Eq.*

unneccssary. But among the wider uses of the word in law is that it describes earth and water in every natural condition, and all things artificially annexed to them. Hence, where there is an authorization, express or implied, to condemn land, the *expropriator* may take under water a coal bed, land with buildings upon it, and in fine all improvements, interests and appurtenances included within the term real estate.

The fear of the complainants is that the commissioners in the condemnation proceedings will not award damages which shall include the value of the water which is upon the land, but this apprehension is groundless. In *Currie* v. *Waverly, &c., Railroad Co.,* 52 *N. J. Law* (*23 Vr.*) *381,* it was held that the law gives as compensation to the owner of lands taken for a public use its fair price for any use for which it has a commercial value of its own in the immediate present or in reasonable anticipation in the near future. Therefore, whatever value the complainants' lands have by reason of the presence of Cherry run upon them, that value will be given to them in the way of compensation for their lands to be taken under the condemnation proceedings.

Besides, this matter is one not properly recognizable in this court, but is subject to the jurisdiction of a court of law. Whether or not water upon lands may be acquired in the condemnation of land is, in my judgment, a purely legal question. The subject here discussed was made the sixth reason for the setting aside of the order appointing commissioners in the cause in the supreme court between the same parties. That reason prays that the order appointing the commissioners in condemnation be set aside because it is proposed to cast the sewage refuse, called effluent, into a drink-water stream in destruction of the rights of the prosecutors. This is equivalent to the assertion that the defendant has no right to acquire the water mentioned for the purposes for which condemnation of the land is sought under the power of eminent domain. Appreciating this, counsel for the complainants on the oral argument contended that the supreme court did not decide the question thus raised. In this he is mistaken. In the opinion of the supreme court, the order appointing the commissioners is upheld upon four distinct grounds, neither one of which involves the sixth reason for re-

versal, but, in conclusion, Mr. Justice Trenchard, delivering the opinion, says that all the other objections argued were considered, but no merit was found in them. Clearly then the sixth exception was considered, if argued, and if not argued should be held to have been abandoned.

Where an action at law is pending (and the *certiorari* proceeding is pending in the court of errors and appeals) relief by bill in equity concerning the same subject-matter should only be auxiliary to the action at law, and questions of a legal character which have been or may be decided in that action should not be reviewed. *Attorney-General* v. *Central Railroad Co., 68 N. J. Eq. (3 Robb.) 198.*

These conclusions lead to the discharge of the order to show cause, and the question remains, shall the bill be dismissed?

On the argument, counsel for the defendant moved that the supplemental bill be dismissed, and counsel for the complainants did not object on the ground of want of proper notice, but urged only the merits of the complainants' case as a reason for retaining the bill. I think that independent of rule 213, under which a bill may be dismissed for want of equity, on notice, without the filing of a demurrer, a bill may be dismissed when it plainly and palpably appears that the complainant has no case whatever. Chancellor Desaussure said in *Holman* v. *Holman, 3 Desaus. Eq. (S. C.) 210*, that motions to dismiss are sometimes granted when it appears on the face of the proceedings that the complainant has no just ground of complaint, or that the court cannot give the relief prayed, but it is very rare that the court will, in this shorthand way, dismiss the parties without giving them an opportunity of substantiating their case, and that the want of right must be very clear to induce the court to act in a manner which, in substance, is a refusal to hear the party.

Vice-Chancellor Leaming in his opinion in *McCarter, Attorney-General, v. Dungan, Colonel, &c.,* recently filed, but not yet reported, entertained a motion to dismiss the bill on the hearing of an application for a preliminary injunction. He denied the injunction, and while he refused the motion to dismiss, he put it on the ground that the bill was sufficient, and seems

to have been made no doubt about his power to dismiss in a proper case.

The case at bar, in my judgment, is a proper case for dismissal. It is true that this supplemental bill was filed by leave of the court, but that was upon an *ex parte* application and it appeared to me at the time that I ought to give the complainants a rule to show cause and an opportunity to be heard on the question of injunction. I am now convinced that the injunction should not go and that the bill absolutely lacks equity, and that, therefore, it should be dismissed. It has been decided in this state that a motion to dismiss a bill for injunction should not be reserved for future determination on final hearing, but should be determined as to all questions of law on the admitted facts, and questions as to jurisdiction of the court, and want of equity, before a preliminary injunction is granted, and in a proper case the bill should be dismissed. *Grey* v. *Greenville and Hudson Railway Co., 59 N. J. Eq. (14 Dick.) 372.*

The order to show cause will be discharged, the preliminary stay vacated, and the supplemental bill will be dismissed, with costs.