208 N.J. Super. 354 (1986)
506 A.2d 19
MEEKER SHARKEY ASSOCIATES, INC. T/A MEEKER SHARKEY & MOFFAT, PLAINTIFF-APPELLANT,
v.
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 5, 1986.
Decided February 26, 1986.
*355 Before Judges O'BRIEN, SIMPSON and SCALERA.
Paul R. Williams, Jr. argued the cause for appellant (Williams & Schirmer, attorneys; Paul R. Williams, on the brief).
Garrett Joest argued the cause for respondent (DeGonge, Garrity & Fitzpatrick, attorneys; Francis X. Garrity, on the brief).
The opinion of the court was delivered by SIMPSON, J.A.D.
Plaintiff appeals from a summary judgment in favor of defendant (insurance company)[1] holding there was no coverage under an insurance contract endorsement purporting to protect the East Orange Board of Education (Board) against liability imposed upon said insured by N.J.S.A. 18A:16-6.1. Plaintiff is an insurance agent that issued the endorsement and paid the counsel fees here involved  and is subrogated to whatever rights the Board may have under the policy. The operative facts are not in dispute and the parties agreed that the matter was ripe for final determination on their cross motions for summary judgment. In our view there was coverage under the policy; hence we reverse and remand for entry of judgment in favor of plaintiff.
*356 Luther Burnette was an employee of the Board who was indicted on May 6, 1980 for 10 counts of misconduct in office (N.J.S.A. 2A:85-1) and unlawfully obtaining school district funds (N.J.S.A. 2A:135-3).[2] He was acquitted of four counts at a trial on July 23, 1981 and also found not guilty of the other six counts at a trial on December 16, 1981. Plaintiff seeks to recoup about $28,000 paid on behalf of the Board towards Burnette's counsel fees.[3] The Board's multi-peril, comprehensive general liability insurance policy was amended, effective July 1, 1981, with the following endorsement:
In consideration of the premium charged, it is agreed that such coverage as is provided by this policy shall be extended to include the liability imposed upon the named insured by sections 18A:16-6 and 18A:16-6.1 of the revised statutes of New Jersey.
The statutes are as follows:
18A:16-6. Indemnity of officers and employees against civil actions
Whenever any civil action has been or shall be brought against any person holding any office, position or employment under the jurisdiction of any board of education, including any student teacher or person assigned to other professional pre-teaching field experience, for any act or omission arising out of and in the course of the performance of the duties of such office, position, employment or student teaching or other assignment to professional field experience, the board shall defray all costs of defending such action, including reasonable counsel fees and expenses, together with costs of appeal, if any, and shall save harmless and protect such person from any financial loss resulting therefrom; and said board may arrange for and maintain appropriate insurance to cover all such damages, losses and expenses.
18A:16-6.1 Indemnity of officers and employees in certain criminal actions
Should any criminal action be instituted against any such person for any such act or omission and should such proceeding be dismissed or result in a final disposition in favor of such person, the board of education shall reimburse him for the cost of defending such proceeding, including reasonable counsel fees and expenses of the original hearing or trial and all appeals.
*357 The question as to coverage arises because the indictment of May 6, 1980 was almost 14 months prior to the July 1, 1981 effective date of the policy endorsement, but the acquittals on July 23, 1981 and December 16, 1981 were within the policy year. The trial court and counsel noted there were no cases on point construing this or similar statutes, but defendant and the judge believed that the analysis in Paterson Tallow Co. v. Royal Globe Ins. Co., 89 N.J. 24 (1982) and Muller Fuel Oil Co. v. Ins. Co. of No. Amer., 95 N.J. Super. 564 (App.Div. 1967) was applicable to the issue presented here. In Paterson Tallow our Supreme Court approved the Muller approach and held that "for the purpose of determining the existence of coverage under [a comprehensive general liability policy], in the absence of any qualifying exclusion or exception the offense of malicious prosecution occurs on the date when the underlying complaint is filed." 89 N.J. at 36-37. In Paterson Tallow the factual picture was similar to the situation here, in that an indictment occurred prior to the date of issuance of the policy and the acquittal occurred during the term of coverage. Instead of an N.J.S.A. 18A:16-6.1 reimbursement claim, however, the coverage question related to a civil damages suit for malicious prosecution. There as here, the policy language referred to an "occurrence" as the liability-creating event followed by reference to "malicious prosecution" coverage "... if such offense is committed during the policy period."
The rationale of Paterson Tallow, however, is not applicable to the present case for several reasons. In the first place, as noted in Muller, 95 N.J. Super. at 576 the tort of malicious prosecution is sui generis. Secondly, as also there noted at p. 578: "As a general rule the time of the `occurrence' of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed but the time when the complaining party was actually damaged." See also, Annotation "Occurrence of accident or injury as during, or before or after, time period of coverage of liability policy," 57 A.L.R.2d 1385 (1958); Hartford Acc. & Indem. Co. v. Aetna Life & Cas. *358 Ins. Co., 98 N.J. 18, 27-28 (1984). Here, the damage to the complaining party, i.e. the Board, was not until the acquittals of Burnette  because that is when the obligation to reimburse for counsel fees was incurred. Thirdly, as noted in Justice Schreiber's dissent in Paterson Tallow, 89 N.J. at 37-38, the applicable tenets of insurance contract interpretation require coverage where the policy language will support two meanings.
Here, to some extent the "occurrence" and "offense" language may suggest a pre-July 1, 1981 coverage trigger date. However, the endorsement incorporated the statutory language of N.J.S.A. 18A:16-6.1 which requires a dismissal or "final disposition" of a criminal action to trigger the obligation to reimburse for counsel fees  and that occurred post-July 1, 1981 and during the policy year. Furthermore, the reasonable expectations of the average reader of the policy endorsement point to coverage because of the "final disposition" language of the statute incorporated into the policy. Paterson Tallow, 89 N.J. at 35, n. 5; Latourette, "The Role of Public Policy and Reasonable Expectations in Construing Insurance Contracts," 47 Temple Law Quarterly, 748 (1973-1974).
Finally, the judge and defendant suggested a public policy consideration in that coverage under the facts of this case could lead, hypothetically, to coverage by purchase of a policy just before the return of a jury verdict of acquittal. An insurance company can always decline to issue a policy or endorsement under such circumstances. At oral argument counsel stipulated that the Board did not volunteer information that Burnette was under indictment and defendant did not inquire as to any such contingent liabilities.[4] In addition, the "final disposition" *359 language of the statute permits myriad possibilities. Burnette could have been found guilty and there would have been no liability for counsel fees. There might have been one or more appeals and possibly a retrial  which might well have gone beyond the initial year of coverage. The statute itself provides the most workable and readily ascertainable date to fix liability and coverage, to wit: dismissal (of the criminal action) or final disposition (in favor of the Board's employee) including all appeals. Since the acquittals in this case occurred during the policy year and constituted final dispositions, there was coverage.
Reversed.
NOTES
[1] The policy in question was written by The Insurance Company of the State of Pennsylvania which was incorrectly designated in the pleadings as the National Union Fire Insurance Company of Pittsburgh, Pa.
[2] The offenses were apparently alleged to have been committed prior to the September 1, 1979 effective date of the New Jersey Code of Criminal Justice. See N.J.S.A. 2C:1-1.b.
[3] Another $45,000 was paid by another carrier under a different policy not involved in this appeal.
[4] We recognize that defendant, in its answer to the complaint, had raised as a separate defense an allegation that plaintiff is estopped because of the Board's failure to disclose the pendency of the criminal charges against Burnette  presumably based on a duty of an insured to reveal information which is material to the risk. Pioneer Nat. Title Ins. Co. v. Lucas, 155 N.J. Super. 332 (App.Div. 1978), aff'd o.b. 78 N.J. 320 (1978). However, defendant did not press this issue below or on appeal, nor did it affirmatively seek relief below by way of rescission or reformation. R. 4:5-4; Harr v. Allstate Ins. Co., 54 N.J. 287, 303-304 (1969); R. 4:7-1. Hence, we do not address the question of what effect such assertions would have on the principles herein set forth and the result reached. Merchants Indem. Corp. v. Eggleston, 37 N.J. 114 (1962); Oradell Village v. Township of Wayne, 101 N.J. Super. 403 (App.Div. 1968), aff'd o.b. 53 N.J. 496 (1969).