775 A.2d 744 (2001)
342 N.J. Super. 113
FAIRLAWN INDUSTRIES, LTD., a New Jersey Limited Partnership, Plaintiff-Respondent,
v.
GERLING AMERICA INSURANCE COMPANY, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued May 29, 2001.
Decided July 10, 2001.
*745 Ruth V. Simon, Newark, argued the cause for appellant (Clausen Miller, attorneys; Edward M. Kay, Andrew C. Jacobson, Melissa A. Murphy-Petros and Ruth V. Simon, of counsel; Ms. Simon, on the brief).
Edward J. Boccher, Piscataway, argued the cause for respondent (Farer Fersko, attorneys; Mr. Boccher, of counsel; Alexander Hemsley, III and Mr. Boccher, on the brief).
Before Judges HAVEY, CUFF and LISA.
The opinion of the court was delivered by HAVEY, P.J.A.D.
By summary judgment, the trial court ordered defendant Gerling America Insurance (Gerling) to provide first-party coverage for a loss suffered by plaintiff Fairlawn Industries, Ltd. (Fairlawn) as a result of a sewer pipeline break. The break occurred under the Passaic River, 385 feet from Fairlawn's property line. *746 The insurance policy issued by Gerling covered Fairlawn's "Described Premises or on land within 1,000 feet thereof." Gerling argues that no coverage is provided under the policy because Fairlawn's loss did not occur on "land." We disagree. In our view, a reasonable insured would expect that the Passaic River bed constituted "land" despite the fact that the river bed was covered with water. We therefore affirm.[1]
Considering the evidentiary material in a light most favorable to plaintiff, Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523, 666 A.2d 146 (1995), these are the facts. Fairlawn owns an industrial complex on the banks of the Passaic River. It leases buildings to various industrial users and maintains a pumping station on the complex which disposes waste generated by the industrial tenants. The station collects and pumps industrial and human waste through a pipeline which extends underneath the Fairlawn property, traverses the riverbed of the Passaic River, and continues underground on the opposite side of the Passaic River where it connects with the interceptor line of the Passaic Valley Sewage Authority.
In April 1995, Fairlawn learned of a break in the pipeline, occurring approximately 385 feet away from its property line, discharging waste water into the Passaic River. Fairlawn immediately retained a contractor and engineer to repair the break and submitted an insurance claim to Gerling seeking coverage for the damages incurred.
Fairlawn was insured under a "Comprehensive All Risk Form" insurance policy. The critical policy provision defined property covered under the policy as "property designated on the Schedule of Locations, all while situated on Described Premises or on land within 1,000 feet thereof." The "Schedule of Locations" identified Fairlawn's premises as a covered property under the policy. However, the term "on land within 1,000 feet" was not defined within the policy.
Gerling denied Fairlawn's claim for insurance coverage, claiming that the damaged pipeline was not on "land" within 1,000 feet of the premises because the break occurred under the Passaic River. Fairlawn filed suit. The motion judge determined that it was within the reasonable expectation of Fairlawn that the insurance coverage under Gerling's comprehensive "all risk" policy encompassed Fairlawn's entire physical premises and operation including the pipeline crossing the Passaic River.
It is well-settled that insurance policies are contracts of adhesion and, as such, are subject to special rules of interpretation. Longobardi v. Chubb Ins. Co. of New Jersey, 121 N.J. 530, 537, 582 A.2d 1257 (1990). Insurance companies employ varied, highly technical and complex instruments with language which is often obscure to the layman and extremely difficult to understand. Sparks v. St. Paul Ins. Co., 100 N.J. 325, 335, 495 A.2d 406 (1985); Allen v. Metropolitan Life Ins. Co., 44 N.J. 294, 302, 208 A.2d 638 (1965). Thus, courts interpreting insurance policies must "`assume a particularly vigilant role in ensuring their conformity to public policy and principles of fairness.'" Gibson v. Callaghan, 158 N.J. 662, 669-70, 730 A.2d 1278 (1999) (quoting Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 175, 607 A.2d 1255 (1992)).
Generally, the words of an insurance policy are to be given their plain and *747 ordinary meaning. Voorhees, supra, 128 N.J. at 175, 607 A.2d 1255; Longobardi, supra, 121 N.J. at 537, 582 A.2d 1257. When the terms of a policy are clear, the court's function is to enforce the written contract and "`should not write for the insured a better policy of insurance than the one purchased.'" Longobardi, supra, 121 N.J. at 537, 582 A.2d 1257 (quoting Walker Rogge, Inc. v. Chelsea Title & Guar. Co., 116 N.J. 517, 529, 562 A.2d 208 (1989)). However, ambiguities in an insurance policy are to be resolved in favor of the insured. Voorhees, supra, 128 N.J. at 175, 607 A.2d 1255. Since insurance companies are the parties who produce the binding documents, consideration should be given to the fact that more precise language could have been utilized to "put the matter beyond legal question." Gibson, supra, 158 N.J. at 672, 730 A.2d 1278.
Further, insurance policies are construed to effectuate the reasonable expectations of the insured. Id. at 671, 730 A.2d 1278; Werner Indus., Inc. v. First State Ins. Co., 112 N.J. 30, 35-36, 548 A.2d 188 (1988). Thus, in the absence of a specific definition in a policy, Crest-Foam Corp. v. Aetna Ins. Co., 320 N.J.Super. 509, 519, 727 A.2d 1030 (App.Div.1999), or when the meaning of a phrase in a policy is ambiguous, Voorhees, supra, 128 N.J. at 174, 607 A.2d 1255, courts must resolve the dispute in line with the insured's objectively reasonable expectations. Moreover, even a simple term, which seems clear and unambiguous, may be enforced contrary to its plain meaning to fulfill the reasonable expectations of the insured. Gibson, supra, 158 N.J. at 671, 730 A.2d 1278.
Here, it is undisputed that the broken pipeline rested on the riverbed of the Passaic River, approximately 385 feet away from Fairlawn's property line. Therefore, it is clear Fairlawn's loss occurred within 1,000 feet of its property. The only question is whether the loss occurred "on land" within the confines of the insurance policy.
New Jersey case law has recognized that the term "land":
includes water, and this understanding seems to be supported by abundant authority. The word `land,' ... includes, not only the naked earth, but everything within it, and the buildings, trees, fixtures, fences, stones, minerals, water, and herbage upon it.
[Philadelphia Trust, Safe Deposit & Ins. Co. v. Mayor, Etc., of Borough of Merchantville, 74 N.J.Eq. 330, 332, 69 A. 729 (1908) (emphasis added defining the term "land" when used in the context of a deed).]
"The word `land' is comprehensive in its import, and includes many things besides the earth we tread on, as water, grass, buildings, fences, trees, and the like," concluding that "all these may be conveyed by the general designation of `land.'" Ibid.
In Wynn v. Margate City, 9 N.J. Misc. 1324, 1326, 157 A. 565 (Sup.Ct.1931), the court held that the term "land," as used in a zoning ordinance, included land covered by water, and in Bruno v. Long Branch, 21 N.J. 68, 72, 120 A.2d 760 (1956), the court held that "the term `lands' is, in the law, a word of art ... [which] includes ... not only the soil, but everything attached to it ... by the hand of man...." Thus, an object annexed to the land, even if underwater, would be legally comprehended within the meaning of the word `land.' Ibid.
We are convinced that the reasonable expectation of an insured is that coverage under the Gerling policy would be offered consistent with this comprehensive case-law definition of the words "on land." The pipeline was an essential component of Fairlawn's complex and operation. Given *748 the fact that the policy provided coverage for losses suffered within 1,000 feet of the complex, Fairlawn would reasonably assume that the pipeline from the pumping station connecting to an off-site piping system would be covered, provided that the loss occurred within 1,000 feet of its property. It is illogical to conclude that coverage would be afforded if the pipeline break occurred on Fairlawn's property or on the dry land of the far bank of the Passaic River, within 1,000 feet of Fairlawn's property, but not if the break occurs in the connecting pipeline on the river bed between these points, simply because the river bed was covered by water.
Affirmed.
NOTES
[1] After the order for summary judgment was entered in Fairlawn's favor, the trial court awarded Fairlawn $423,944.36 in damages after a bench trial.