Reversed and remanded for further proceedings.

———

782 A.2d 972

BOARD OF EDUCATION OF THE BOROUGH OF FLORHAM PARK, PLAINTIFF, v. UTICA MUTUAL INSURANCE COMPANY, DEFENDANT–APPELLANT,SELECTIVE INSURANCE COMPANY, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 17, 2001—Decided October 31, 2001.

Before Judges PETRELLA, STEINBERG and ALLEY.

*Francis X. Garrity* argued the cause for appellant (*Garrity, Graham, Favetta & Flynn,* attorneys; *Rudolph G. Morabito* and *Mr. Garrity,* on the brief).

*Sharon Handrock Moore* argued the cause for respondent (*Gebhardt & Kiefer,* attorneys; *Ms. Moore* and *Arthur J. Fialk,* on the brief).

The opinion of the court was delivered by

PETRELLA, P.J.A.D.

Utica Mutual Insurance Company (Utica)[1] appeals from a judgment in a declaratory judgment action ordering it to indemnify plaintiff Board of Education of the Borough of Florham Park (Board) for its liability under *N.J.S.A.* 18A:16–6.1. Utica asserts that coverage is available only under a policy issued by defendant Selective Insurance Company (Selective). Alternatively, it asserts that if there is coverage under its policy, Selective's policy also provides coverage.

Utica argues that: (1) the judge erred in concluding that it provided the Board coverage under its policy; (2) alternatively, if both the Utica and Selective policies are ambiguous as to the triggering mechanism, then coverage should be provided under both policies; (3) the decision in *Meeker Sharkey Associates, Inc. v. National Union Fire Ins. Co.*, 208 *N.J.Super.* 354, 506 *A.*2d 19 (App.Div.1986), relied upon by the motion judge, was wrongly decided as it failed to follow the Supreme Court's decision in *Paterson Tallow Co., Inc. v. Royal Globe Ins. Co.*, 89 *N.J.* 24, 444 *A.*2d 579 (1982); and (4) assuming coverage exclusively by Selective, or concurrently with Utica, then Utica is entitled to full or partial reimbursement of the monies it paid.

The judge ruled that Utica had the sole obligation to supply insurance coverage to the Board for indemnification for one of its employees, David Ford, who successfully defended a criminal action brought against him. Utica was required to pay, pursuant to responsibility of the Board under *N.J.S.A.* 18A:16–6.1, $487,831.08, in counsel fees and expenses Ford incurred in his successful defense of the criminal action. In addition, Utica was ordered to pay, pursuant to *R.* 4:42–9(a)(6), $190 in costs and

---

[1] The policy in question was written by Graphic Arts Mutual Insurance Company, an affiliate of Utica Mutual Insurance Company. For convenience the parties refer to Utica and we adopt that nomenclature.

$26,675 in counsel fees incurred by the Board in pursuing the declaratory judgment action.[2]

The underlying facts giving rise to the insurance coverage dispute, essentially between the two insurance carriers, arose when Ford, a teacher employed by the Board, on June 19, 1996 was charged with sexually assaulting and recklessly endangering the welfare of four of his female students. Ford was indicted, criminally tried, and, on March 26, 1999, acquitted after a trial of all charges. Following his acquittal, Ford filed a claim with the Board pursuant to *N.J.S.A.* 18A:16–6.1 for reimbursement of his counsel fees and expenses in successfully defending the criminal action.

Selective provided the appropriate insurance coverage to the Board from July 1, 1993 through July 1, 1996. An endorsement to Selective's policy stated, in relevant part:

5. Subject to its terms, conditions and exclusions, this Coverage Part shall conform to the terms of the New Jersey compiled statutes—Title 18A:12–20, 18A:16–6 and 18A:16–6.1, their supplements, revisions and amendments.

Utica provided insurance to the Board from July 1, 1996 through July 1, 1999. An endorsement included in its policy stated, in pertinent part:

A. NEW JERSEY LAWS

Such insurance as is afforded by the Policy applies to the obligations imposed upon you by *N.J.S.A.* 18A:12–20; 18A:16–6; and if permitted by law, 18A:16–6.1.

The Board sought indemnification from either or both insurers under the endorsements in their respective policies. Selective proceeded under a Reservation of Rights letter which stated:

Florham Park Board of Education failed to make proper disposition of funds owed to Mr. Ford. He is entitled by Statute to recover ... attorney fees....

Coverage under the Endorsement CG 7036 (paragraph 5) allows for reimbursement of legal fees/expenses of employees of the Board of Education; who are found not guilty in a criminal trial. However, any legal expenses incurred in the prosecution of additional criminal and/or civil prosecution would fall outside our effective dates.

---

2 Utica asserts it made the required payments under the Law Division Judge's orders.

* * *

As noted earlier, coverage is available for Mr. Ford's criminal attorney fees under paragraph 5 of the Endorsement CH 70–36, for reimbursement of legal fees/expenses of Mr. Ford as he was found not guilty of sexual misconduct in a criminal trial.

Utica also disclaimed coverage, with a reservation of rights, in a letter dated May 12, 1999, because on June 19, 1996, when Ford was arrested and charges were brought against him, its policy was not yet in effect.

In his oral opinion, the trial judge observed there was no dispute that the Board "is liable for the coverage for the indemnification," and that one of the insurance companies is liable. The judge correctly recognized neither policy expressly dealt with the triggering event. He also said:

It seems to me that within the meaning of *N.J.S.A.* 18A:16–6.1 the potential triggering of liability occurred with the filing of a complaint and the arrest of Mr. Ford on June 16, 1996 . . . . while the Selective policy was in force.

Now, the actual established duty to indemnify did not take place until early 1999 when the jury verdict acquitting Mr. Ford was returned. Utica says that the key event should be the institution of charges in determining which of the two carriers is liable. Selective says the key event is the acquittal and the ultimate establishment of the duty to indemnify.

There's a fallback position which Utica has, which is that maybe both companies should indemnify if-if there is an ambiguity with respect to which policy should cover. . . .

Now, I have to say that I'm more inclined to accept Selective's view that the critical coverage event is the acquittal. . . . I'm inclined to think that that's probably the . . . most significant event and the one that the legislature really had in mind. Compensating the defendant on charges who is successful in defending the charges.

The judge felt he was bound by *Meeker Sharkey v. National Fire Insurance Company, supra* (208 *N.J.Super.* 354, 506 *A.*2d 19), where the triggering event was held to be when there was an acquittal and that was when the damage occurred to the insured within insurance law concepts. The judge here then concluded that Utica had the obligation to provide coverage to the Board regarding indemnification of Ford.

Utica argues that the trial judge erred in concluding that it was responsible for indemnifying the Board for its liability pursuant to *N.J.S.A.* 18A:16–6.1, which provides:

Should any criminal action be instituted against any such person for any such act or omission and should such proceeding be dismissed or result in a final disposition in favor of such person, the board of education shall reimburse him for the cost of defending such proceeding, including reasonable counsel fees and expenses of the original hearing or trial and all appeals.

Section 6.1, as well as *N.J.S.A.* 18A:16–6,[3] provides that board of education employees are entitled to indemnification for counsel fees and expenses in defending against criminal charges where the act or omission on which the criminal charges are based arise "out of and in the course of performance of the duties" of the position held by the employee, and the charges are dismissed or result in a final disposition favorable to the employee. *Bower v. Bd. of Educ. of East Orange*, 149 *N.J.* 416, 423, 694 *A.*2d 543 (1997). There is no dispute that this was the case here and that Ford is entitled to reimbursement under *N.J.S.A.* 18A:16–6.1. The dispute is between two insurance carriers as to whether Selective's or Utica's policy, or perhaps both, provides the coverage.

In *Meeker Sharkey, supra* (208 *N.J.Super.* 354, 506 *A.*2d 19), a subrogation case, only one insurance company was involved. An employee of the East Orange Board of Education was indicted for ten counts of misconduct in office and for unlawfully obtaining school district funds. He was acquitted of four counts at one trial

---

[3] *N.J.S.A.* 18A:16–6:

Whenever any civil action has been or shall be brought against any person holding any office, position or employment under the jurisdiction of any board of education, including any student teacher or person assigned to other professional pre-teaching field experience, for any act or omission arising out of and in the course of the performance of the duties of such office, position, employment or student teaching or other assignment to professional field experience, the board shall defray all costs of defending such action, including reasonable counsel fees and expenses, together with costs of appeal, if any, and shall save harmless and protect such person from any financial loss resulting therefrom; and said board may arrange for and maintain appropriate insurance to cover all such damages, losses and expenses.

and then found not guilty of the other six counts at another trial. Approximately $28,000 was paid on behalf of that board toward the employee's attorney's fees. An endorsement to its insurance policy stated:

> In consideration of the premium charged, it is agreed that such coverage as is provided by this policy shall be extended to include the liability imposed upon the named insured by sections 18A:16–6 and 18A:16–6.1 of the revised statutes of New Jersey.

The indictment against the employee occurred during the coverage period, but almost fourteen months before the effective date of the policy endorsement. However, the acquittals were within the period the endorsement was in effect. Based on the principle that the wrongful act covered under this policy was when the complaining party was actually damaged, we held that the damage to the East Orange Board did not occur until the time of the acquittals because that was when it incurred the obligation. Under the circumstances presented, we there said that the "final disposition" language of *N.J.S.A.* 18A:16–6.1, *i.e.*, the date of dismissal or final disposition in favor of the employee, including all appeals, "provides the most workable and readily ascertainable date to fix liability and coverage." *Id.* at 359, 506 *A.*2d 19.

In contrast, in *Paterson Tallow Co., Inc. v. Royal Globe Ins. Co., supra* (89 *N.J.* 24, 444 *A.*2d 579), the employee's indictment occurred prior to the effective date of the policy and the acquittal occurred during the period of coverage. After he was acquitted, the employee sued the employer for malicious prosecution. The policy provided coverage for malicious prosecution committed during the conduct of the employer's business. *Id.* at 26–27, 444 *A.*2d 579. The Court held that for the purpose of insurance coverage, malicious prosecution occurred at the time the underlying complaint was filed because that was when the complaining party, *i.e.*, the plaintiff in the malicious prosecution suit, was actually damaged. *Id.* at 36–37, 444 *A.*2d 579. Therefore, the Court upheld the denial of coverage because the underlying complaint was filed before the effective date of the policy.

*Meeker* distinguished *Paterson Tallow* on three grounds: (1) "the tort of malicious prosecution is *sui generis* "; (2) in *Meeker,* "the damage to the complaining party, *i.e.,* the board, was not until the acquittals" of the employee "because that is when the obligation to reimburse for counsel fees was incurred"; and (3) "the applicable tenets of insurance contract interpretation require coverage where the policy language will support two meanings." 208 *N.J.Super.* at 357–358, 506 *A.*2d 19.

We do not consider that *Meeker* applies here because that case inadequately distinguished *Paterson Tallow.* While it is true that in *Muller Fuel Oil Co. v. Ins. Co. of N. Amer.,* 95 *N.J.Super.* 564, 576, 232 *A.*2d 168 (App.Div.1967), we said that the tort of malicious prosecution is *"sui generis."* We reasoned:

> The tortious act is committed ordinarily by the filing of a criminal complaint with malice and without probable cause. "The *essence* of an action for malicious prosecution is that the proceeding was instituted without probable cause, that the complainant was actuated by a malicious motive in making the charge." *Earl v. Winne,* 14 *N.J.* 119, 134, 101 *A.*2d 535 (1953). Often, as here, the accused is arrested, required to post bail to secure his liberty pending trial, and his reputation is adversely affected. Thus, damage flows immediately from the tortious act. But the accused may not sue for any damage sustained unless and until the criminal proceeding has terminated in his favor. *Ibid.* In addition to the proof of the termination in his favor, "the plaintiff must adduce affirmative proof * * * tending to show the falsity of or want of probable cause for the charge laid against him, or that the defendant did not honestly believe in his guilt." *Id.,* at p. 135, 101 *A.*2d 535. Thus, although a favorable termination of the criminal proceeding is a condition precedent to institution of the action, the "essence" of the tort is the wrongful conduct in making the criminal charge.

Malicious prosecution differs from other causes of action because the tortious act is committed by the filing of the criminal complaint with malice and without probable cause. Analogously, the damage flows to the defendant in a criminal action from the institution of the criminal proceeding because, at that point, the defendant is subject to arrest, required to post bail to secure liberty pending trial and has to retain counsel and begin incurring legal expenses. Although a condition precedent to a suit under *N.J.S.A.* 18A:16–6.1 is the dismissal or final disposition of the proceeding in favor of the employee, the key point is the commencement of the criminal action against an employee of the

Board "for any act or omission arising out of and in the course of the performance of the duties of such ... employment." *N.J.S.A.* 18A:16–6, –6.1. Merely because criminal proceedings are not based on malice and lack of probable cause, does not warrant treating reimbursement actions based on dismissed criminal charges differently than malicious prosecution suits. The complaining party is damaged in each case when the complaint is brought against the defendant. Therefore, under the well-established principle that the "occurrence" of an event within the meaning of an indemnity policy is when the complaining party is actually damaged, *Paterson Tallow, supra* (89 *N.J.* at 31, 444 *A.*2d 579), the triggering event here was the institution of the criminal action against Ford. That is when his potential damages started to accrue, although damages are contingent on a successful disposition in his favor.

In *Meeker,* since the East Orange Board's insurance agent that had issued the endorsement had paid the claims and then sought reimbursement from the insurer, 208 *N.J.Super.* at 255, 505 *A.*2d 210, the agent, who was surrogated to whatever rights the board may have had, was the complaining party. Thus, the court's focus was on the time when that board became obligated to reimburse the employee for the counsel fees he incurred. However, in *Paterson Tallow,* the insured sought indemnification, but the real claimant was the plaintiff of the malicious prosecution action. This party is the counterpart of the acquitted defendant in the underlying action, and the party seeking reimbursement. 89 *N.J.* at 31, 444 *A.*2d 579; *see also Muller, supra* (95 *N.J.Super.* at 579, 232 *A.*2d 168). Therefore, Ford, the defendant in the underlying criminal action, as the one seeking damages under *N.J.S.A.* 18A:16–6.1, is the real claimant for insurance purposes. *Meeker* incorrectly focuses on the time when the insured, *i.e.,* the board, and not the complaining party, was actually damaged. As a result, it should not have been followed here.

*Meeker* is further distinguishable because there the board was insured under the endorsement at the time of the acquittal, not when the criminal charges were instituted. Thus, the East

Orange Board was accorded coverage by construing an ambiguous policy as requiring dismissal or final disposition of a criminal action in favor of the employee to trigger the obligation of the insurance company to provide coverage to the board for reimbursement. *Meeker* decided that where the policy language supports two meanings, "the tenets of insurance contract interpretation require coverage." *Id.* at 358, 506 A.2d 19. The policy was interpreted to provide coverage on the date of acquittal. Here, the Florham Park Board was covered by Selective at the institution of the criminal action, and Utica at its termination. The Board had the requisite insurance coverage. The only question for the court was which party would have to pay the indemnification.

Finally, in our view the "final disposition" language of *N.J.S.A.* 18A:16–6.1 does not address the triggering event for coverage. Rather, it concerns when the defendant in a criminal action is entitled to reimbursement from the Board. Recovery for the employee is contingent upon a favorable disposition of the criminal case.

There was no issue argued or presented in this case of notice or when the claim was presented. At oral argument both sides declined to make an argument based thereon. Hence, we do not decide based on those issues and in addition consider them waived. Thus, we conclude that coverage is afforded to the Board solely under the Selective policy because its policy was in effect when Ford was arrested and charged.

We reverse and remand to the Law Division for a judgment declaring coverage under Selective's policy, and a hearing, if necessary, to resolve any open questions of "reasonable counsel fees and expenses" (*N.J.S.A.* 18A:16–6.1). Utica is also entitled to a judgment in its favor for reimbursement of monies it previously paid pursuant to the Law Division's orders.