798 A.2d 605

BOARD OF EDUCATION OF THE BOROUGH OF FLORHAM PARK, PLAINTIFF, v. UTICA MUTUAL INSURANCE COMPANY, DEFENDANT–RESPONDENT, AND SELECTIVE INSURANCE COMPANY, DEFENDANT–APPELLANT.

Argued March 25, 2002—Decided June 13, 2002.

302

*Sharon Handrock Moore,* argued the cause for appellant (*Gebhardt & Kiefer,* attorneys; *Ms. Moore* and *Arthur D. Fialk,* on the briefs).

*Francis X. Garrity,* argued the cause for respondent (*Garrity, Graham, Favetta & Flinn,* attorneys; *Rudolph G. Morabito,* of counsel and on the brief).

The opinion of the Court was delivered by

COLEMAN, J.

This appeal involves a dispute between two insurance companies over what triggers coverage for criminal defense indemnification expenses under their respective policies for board of education employees. We are required to decide whether it is the filing of criminal charges against an officer or employee of a board of education, or the acquittal or dismissal of the charges, that triggers coverage under an insurance policy issued to satisfy the board's statutory obligation to indemnify such employees when criminal charges are disposed of in their favor. The trial court found that the triggering event was the favorable disposition, here an acquittal. The Appellate Division reversed, holding that the triggering event was the filing of the criminal charges. *Bd. of Educ. of Florham Park v. Utica Mut. Ins. Co.,* 344 *N.J.Super.* 558, 566, 782 *A.*2d 972 (2001). We disagree, and hold that the triggering event is the acquittal or other disposition of the criminal charges in favor of the officer or employee of the board of education.

## I.

On June 19, 1996, David Ford, a teacher employed by the Borough of Florham Park Board of Education (Board), was arrested and charged with sexually assaulting and recklessly endangering the welfare of four of his female students. A jury acquitted Ford of all charges on March 26, 1999. Thereafter, he demanded that the Board reimburse him pursuant to *N.J.S.A.* 18A:16–6.1 for $487,831.08 in counsel fees and expenses incurred in successfully defending the criminal action. In response to that demand, the Board sought coverage from Selective Insurance Company (Selective) and Utica Mutual Insurance Company (Utica) for its obligation to Ford.

At the time of Ford's arrest, the Board was insured by Selective under a policy that provided coverage from July 1, 1993 to July 1, 1996. Thus, the Board had coverage under Selective's policy until twelve days after Ford's arrest. The Selective policy included the following endorsement:

> With respect to the operation of any college or school by you or on your behalf:
>
> 5. Subject to its terms, conditions and exclusions, this Coverage Part shall conform to the terms of the New Jersey compiled statutes—Title 18A:12–20, 18A:16–6 and 18A:16–6.1, their supplements, revisions and amendments.

From July 1, 1996 to July 1, 1999, the Board was insured under Utica's policy. An endorsement to that policy also refers to the relevant statutes and provides:

> A. NEW JERSEY LAWS
>
> Such insurance as is afforded by the Policy applies to the obligations imposed upon you by *N.J.S.A.* 18A:12–20; 18A:16–6; and if permitted by law, 18A:16–6.1.

Consequently, both policies define the triggering event by reference to the Board's statutory obligation.

In a letter dated May 12, 1999, Utica disclaimed coverage on the ground that its policy was not in effect when Ford was criminally charged on June 19, 1996. Shortly thereafter, Selective informed the Board on June 4, 1999 that "[c]overage under the Endorsement ... allows for reimbursement of legal fees/expenses of employees of the Board of Education who are found not guilty in a criminal trial." The letter also stated that "coverage is available

for Mr. Ford's criminal attorney fees under ... the Endorsement ... for reimbursement of legal fees/expenses of Mr. Ford as he was found not guilty of sexual misconduct in a criminal trial." Selective denied coverage, however, for any legal expenses that were incurred after its policy expired, and also reserved the right to deny all coverage.

Faced with denial of coverage by the carrier on the risk when the criminal charges were filed and the carrier on the risk when Ford was acquitted on the charges, the Board filed the present declaratory judgment action against both carriers. Following a hearing, the trial court determined that Utica was responsible for coverage of the Board's liability to indemnify Ford for the legal fees and expenses incurred by him because Utica was on the risk when Ford was acquitted. The trial court concluded that the language of both policies was ambiguous in that neither policy explicitly sets forth the triggering event for coverage of the Board's liability under *N.J.S.A.* 18A:16–6.1. Nonetheless, the court felt bound by *Meeker Sharkey Associates, Inc. v. National Union Fire Insurance Co.*, 208 *N.J.Super.* 354, 358, 506 *A.2d* 19 (App. Div.1986), which held that under *N.J.S.A.* 18A:16–6.1 the triggering event for insurance coverage is an acquittal or final disposition in favor of the employee.

The Appellate Division reversed, concluding that the triggering event for coverage pursuant to the controlling statutes is when the Board's officer or employer is actually damaged. The court found that Ford actually was damaged when the criminal charges were filed against him, and that at that time "damages started to accrue, although damages are contingent on a successful disposition in his favor." *Bd. of Educ. of Florham Park, supra,* 344 *N.J.Super.* at 565, 566, 782 *A.2d* 972. The panel distinguished *Meeker Sharkey* as "incorrectly focus[ing] on the time when the insured, *i.e.,* the board, and not the complaining party, was actually damaged. As a result, it should not have been followed here." *Id.* at 566, 782 *A.2d* 972. The panel also found *Meeker Sharkey* inapplicable because that panel interpreted an ambiguous

endorsement to provide coverage on the date of acquittal. *Id.* at 566–67, 782 *A*.2d 972. Finally, the panel concluded that the "final disposition" language of *N.J.S.A.* 18A:16–6.1 does not address the triggering event for coverage, but rather provides the time when the defendant in a criminal action is entitled to reimbursement from the Board. *Id.* at 567, 782 *A*.2d 972. Accordingly, Selective was directed to pay Ford's reasonable counsel fees and expenses pursuant to *N.J.S.A.* 18A:16–6.1.

We granted Selective's petition for certification, 171 *N.J.* 44, 791 *A*.2d 222 (2002), and now reverse.

## II.

■ Selective argues that the Appellate Division erred in failing to follow the holding in *Meeker Sharkey* that an acquittal is a triggering event for coverage under *N.J.S.A.* 18A:16–6.1. Selective maintains that "[w]hat is required for the indemnification obligation upon the Board is only that the criminal defendant and the conduct have the necessary employment relationship, and that the criminal charges be resolved favorably to the employee." Therefore, according to Selective, "[n]othing is triggered until that final resolution" because the "controlling factor ... in defining the essence of the indemnification claim and in imposing that requirement on the Board is defined by the term of *N.J.S.A.* 18A:16–6.1, as is the policy coverage which references the statute."

It is undisputed that Ford is entitled to reimbursement by the Board for his counsel fees and expenses incurred in defending the criminal charges based on *N.J.S.A.* 18A:16–6.1. The insurance policies refer to that statute as well as *N.J.S.A.* 18A:16–6 and *N.J.S.A.* 18A:12–20 in defining what triggers coverage. Those statutes provide:

> Whenever any civil or administrative action or other legal proceeding has been or shall be brought against any person holding any office, position or employment under the jurisdiction of any board of education, including any student teacher or person assigned to other professional pre-teaching field experience, for any act or omission arising out of and in the course of the performance of the duties of such office, position, employment or student teaching or other assignment to profession-

al field experience, the board shall defray all costs of defending such action, including reasonable counsel fees and expenses, together with costs of appeal, if any, and shall save harmless and protect such person from any financial loss resulting therefrom .... Any board of education may arrange for and maintain appropriate insurance to cover all such damages, losses and expenses.

*[N.J.S.A. 18A:16–6.]*

Should any criminal or quasi-criminal action be instituted against any such person for any such act or omission and should such proceeding be dismissed or result in a final disposition in favor of such person, the board of education shall reimburse him for the cost of defending such proceeding, including reasonable counsel fees and expenses of the original hearing or trial and all appeals.... Any board of education may arrange for and maintain appropriate insurance to cover all such damages, losses and expenses.

*[N.J.S.A. 18A:16–6.1.]*

Whenever a civil, administrative, criminal or quasi-criminal action or other legal proceeding has been or shall be brought against any person for any act or omission arising out of and in the course of the performance of his duties as a member of a board of education, and in the case of a criminal action such action results in final disposition in favor of such person, the board of education shall defray all costs of defending such action, including reasonable counsel fees and expenses, together with costs of appeal, if any, and shall save harmless and protect such person from any financial loss resulting therefrom.... Any board of education may arrange for and maintain appropriate insurance to cover all such damages, losses and expenses.

*[N.J.S.A. 18A:12–20.]*

Read collectively, those statutes obligate a board of education to defray all costs incurred by an officer or employee of the board in defending criminal charges filed against the person where those charges: (1) arose out of and in the course of the performance of the duties of that person, and (2) resulted in a final disposition in favor of such person. Clearly, an acquittal is a final disposition that is favorable to any criminal defendant. *N.J.S.A.* 18A:16–6.1 specifically authorizes a board of education to purchase "appropriate insurance to cover all such damages, losses and expenses" the board may be obligated to pay. Rather than specifying what event triggers coverage under their respective policy, each carrier relied on the foregoing statutes to describe the scope and purpose of the insurance provided.

"It is well-settled that insurance policies are contracts of adhesion and, as such, are subject to special rules of interpretation." *Fairlawn Indus., Ltd. v. Gerling Am. Ins. Co.,* 342 *N.J.Su-*

*per.* 113, 117, 775 *A.*2d 744 (App.Div.2001) (citing *Longobardi v. Chubb Ins. Co. of N.J.*, 121 *N.J.* 530, 537, 582 *A.*2d 1257 (1990)). In interpreting the language of an insurance contract, a court must first attribute to the words their plain and ordinary meaning. *Zacarias v. Allstate Ins. Co.*, 168 *N.J.* 590, 595, 775 *A.*2d 1262 (2001). Indeed, "[i]n the absence of any ambiguity, courts 'should not write for the insured a better policy of insurance than the one purchased.'" *Gibson v. Callaghan*, 158 *N.J.* 662, 670, 730 *A.*2d 1278 (1999) (quoting *Walker Rogge, Inc. v. Chelsea Title & Guar. Co.*, 116 *N.J.* 517, 529, 562 *A.*2d 208 (1989)). However, where the policy language reveals ambiguity, a court must resolve that ambiguity in favor of the insured. *Voorhees v. Preferred Mut. Ins. Co.*, 128 *N.J.* 165, 175, 607 *A.*2d 1255 (1992). In such circumstances, an insurance contract is interpreted to effectuate the reasonable expectations of the insured. *Gibson, supra*, 158 *N.J.* at 671, 730 *A.*2d 1278.

■ Under the statutory language incorporated by reference into the policies, we must decide whether the institution of criminal charges or acquittal on those charges triggers coverage. Indemnification obligations generally accrue only on an event fixing liability, rather than on preliminary events that eventually may lead to liability but have not yet occurred. *Holloway v. State*, 125 *N.J.* 386, 399, 593 *A.*2d 716 (1991); *see also United N.Y. Sandy Hook Pilots Ass'n v. Rodermond Indus.*, 394 *F.*2d 65, 75 (3d Cir.1968) (stating that cause of action for indemnification accrues when liability is fixed by judgment against or payment by indemnitee); *Wolverine Ins. Co. v. Tower Iron Works, Inc.*, 370 *F.*2d 700, 703 (1st Cir.1966) (stating that cause of action for indemnification accrues when indemnitee suffers loss by paying injured person); *McGlone v. Corbi*, 59 *N.J.* 86, 94–95, 279 *A.*2d 812 (1971) (stating that cause of action for indemnification accrues at time judgment is rendered against indemnitee for underlying claim); *Adler's Quality Bakery, Inc. v. Gaseteria, Inc.*, 32 *N.J.* 55, 81, 159 *A.*2d 97 (1960) (same).

■ Because both policies incorporate by reference the statutory language concerning the Board's reimbursement obligation, we conclude that the language of the policies is not ambiguous. In *Bower v. Board of Education of East Orange*, 149 *N.J.* 416, 423, 694 *A.*2d 543 (1997), this Court explained that

N.J.S.A. 18A:16–6.1, read in connection with the complimentary provisions of N.J.S.A. 18A:16–6, prescribes a two-part standard for determining whether board of education employees are entitled to indemnification of counsel fees and expenses incurred in the defense of criminal charges: (1) any act or omission on which the criminal charges are based must arise 'out of and in the course of the performance of the duties' of the position held by the employee, and (2) the charges must either be dismissed or result in a final disposition favorable to the employee.

Based on our holding in *Bower*, the right of a board of education employee to reimbursement or indemnification accrues when the criminal charges result in an acquittal or otherwise are dismissed.

The Appellate Division's reliance on *Paterson Tallow Co. v. Royal Globe Insurance Cos.*, 89 *N.J.* 24, 444 *A.*2d 579 (1982), is misplaced. In that case, the former employer-insured filed criminal charges against a former employee. *Id.* at 26, 444 *A.*2d 579. While those charges were pending, the former employer purchased an insurance policy that provided coverage for malicious prosecution. *Id.* at 26–27, 444 *A.*2d 579. During the coverage period under the policy, the former employee was acquitted of the criminal charges. *Id.* at 27, 444 *A.*2d 579. The former employee then sued his former employer alleging malicious prosecution. *Ibid.* When the insurance carrier denied coverage, the former employer-insured initiated a declaratory judgment action. *Id.* at 28, 444 *A.*2d 579. The insurer sought to dismiss the declaratory judgment action on the ground that all of the acts alleged to constitute malicious prosecution occurred prior to issuance of the policy. *Ibid.* The trial court granted the motion and the Appellate Division affirmed. *Id.* at 28–29, 444 *A.*2d 579. This Court also affirmed and held that the "offense of malicious prosecution is substantially completed once the [malicious prosecution] complaint is filed, and the favorable termination of the maliciously prosecuted proceedings is merely a prerequisite to the filing of the suit." *Id.* at 34, 444 *A.*2d 579.

Unlike the present case, Paterson Tallow was the insured and its own conduct triggered its liability when Paterson Tallow initiated criminal charges against an employee. In that respect, it is reasonable to use the action or conduct of the insured in filing the criminal charges as the "triggering event" for liability for malicious prosecution. In a statutory indemnification case, however, the "essence" of the claim is not the filing of the criminal charges. The Board cannot and does not control the filing of the criminal charges. Instead, the Board's liability is triggered by the event specified in the statutes, namely a final disposition of those charges in favor of the Board's employee. Furthermore, the Court in *Paterson Tallow* recognized the unique nature of a malicious prosecution claim, stating that although in general an occurrence for purposes of insurance coverage depends on when the complaining party is actually damaged, that analysis is "inapplicable to a malicious prosecution claim because 'damage begins to flow from the very commencement of the tortious conduct—the making of the criminal complaint.'" *Id.* at 31, 444 *A.*2d 579 (quoting *Muller Fuel Oil Co. v. Ins. Co. of North Am.,* 95 *N.J.Super.* 564, 579, 232 *A.*2d 168 (1967)).

The reasoning adopted by the Appellate Division in *Meeker Sharkey* is instructive. In that case, a board of education employee was indicted on May 6, 1980 on ten counts of misconduct in office and unlawfully obtaining school district funds. *Meeker Sharkey, supra,* 208 *N.J.Super.* at 356, 506 *A.*2d 19. The board of education's policy was amended on July 1, 1981 to cover the liability imposed upon the board of education by *N.J.S.A.* 18A:16–6 and *N.J.S.A.* 18A:16–6.1. The board of education employee was acquitted of all charges at the conclusion of two trials on July 23, 1981 and December 16, 1981. Approximately $28,000 in counsel fees and expenses were sought as reimbursement for the criminal defense from the carrier. *Ibid.* The trial court granted summary judgment to the carrier because the indictment had been filed almost fourteen months *prior* to the effective date of the insurance coverage. *Id.* at 357, 506 *A.*2d 19.

In determining whether the policy covered the board of education during the relevant times, the *Meeker Sharkey* court distinguished *Paterson Tallow*. *Ibid.* Although recognizing that in both cases "an indictment occurred prior to the date of issuance of the policy and the acquittal occurred during the term of coverage," the court explained that the coverage question in *Paterson Tallow* related to a civil damages suit for malicious prosecution and not an "*N.J.S.A.* 18A:16–6.1 reimbursement claim." *Ibid.* The court further distinguished *Paterson Tallow* on the ground that "the tort of malicious prosecution is *sui generis.*" *Ibid.* (citing *Muller, supra,* 95 *N.J.Super.* at 576, 232 *A.*2d 168). The court then noted that

> "[a]s a general rule the time of the 'occurrence' of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed but the time when the complaining party was actually damaged."
>
> [*Ibid.* (quoting *Muller, supra,* 95 *N.J.Super.* at 578, 232 *A.*2d 168).]

Finally, the court pointed out that "the applicable tenets of insurance contract interpretation require coverage where the policy language will support two meanings." *Id.* at 358, 506 *A.*2d 19. In that respect, the court recognized that the terms

> "occurrence" and "offense" ... may suggest a pre-July 1, 1981 coverage trigger date. However, the endorsement incorporated the statutory language of *N.J.S.A.* 18A:16–6.1 which requires dismissal or "final disposition" of a criminal action to trigger the obligation to reimburse for counsel fees—and that occurred post-July 1, 1981 and during the policy year.
>
> [*Ibid.*]

The court reasoned that the reasonable expectations of the average insured required coverage because of the " 'final disposition' language of the statute incorporated into the policy." *Ibid.* The court concluded that

> [t]he statute itself provides the most workable and readily ascertainable date to fix liability and coverage, to wit: dismissal (of the criminal action) or final disposition (in favor of the Board's employee) including all appeals. Since the acquittals in this case occurred during the policy year and constituted final dispositions, there was coverage.
>
> [*Id.* at 359, 506 *A.*2d 19.]

The board of education therefore incurred no obligation to indemnify or reimburse until the acquittal. *Ibid.*

 We agree with the analysis in *Meeker Sharkey* and hold that the triggering event under the indemnification for criminal defense expenses statutes is the favorable disposition of all criminal charges against the Board employee or officer. When multiple policies refer to the same statutes to define the triggering mechanism that is based on when the insured incurs an obligation to indemnify or reimburse an employee, the "continuous trigger" doctrine is inapplicable and only one carrier is liable. See *Owens–Illinois, Inc. v. United Ins. Co.*, 138 *N.J.* 437, 451, 650 *A.*2d 974 (1994). Here, because Ford incurred no reimbursable expenses prior to his acquittal, only Utica's policy is triggered. At the time of the acquittal the Selective policy had expired and no reimbursable expenses had been incurred during the time that policy was in effect.

## III.

The judgment of the Appellate Division is reversed.

LONG, J. dissenting.

I would affirm the judgment of the Appellate Division insofar as it concludes that the triggering event for coverage was the filing of the criminal complaint against Ford, and would adopt the reasoning of *Paterson Tallow* over that of *Meeker Sharkey*. In my view, the outcome of *Meeker Sharkey* was driven by the fact that there was insurance coverage only on the date of the acquittal, not on the date the criminal charges were filed. Under the rules governing the interpretation of ambiguous insurance contracts, the outcome in favor of accessing the only available insurance coverage was foreordained.

On the contrary, here, as Judge Petrella, writing for the Appellate Division, observed:

> [T]he Florham Park Board was covered by Selective at the institution of the criminal action, and Utica at its termination. The Board had the requisite insurance coverage. The only question for the court was which party would have to pay the indemnification. . . .

> [T]he "final disposition" language of *N.J.S.A.* 18A:16–6.1 does not address the triggering event for coverage. Rather, it concerns when the defendant in a criminal action is entitled to reimbursement from the Board.
>
> [*Bd. of Educ., supra,* 344 *N.J.Super.* at 567, 782 *A.*2d 972.]

Put another way, the acquittal requirement is merely a prerequisite to an action by an employee for indemnification.

The coverage issue is entirely distinct. What is covered in an indemnity policy is an occurrence. The covered occurrence in *Paterson Tallow* was the institution of a criminal prosecution. So it is here. The ultimate vindication of Ford, through his acquittal, merely provided evidence of what had been the case all along, that he was innocent and had incurred expenses in defending himself that legitimately belonged to the Board. Insurers insure occurrences and not knowledge of occurrences. It was from the indictment that damage flowed to Ford and spilled over on the Board of Education.

Although, as the divergent opinions of the majority and the Appellate Division reflect, the legalities may be debatable, what is not debatable is the policy effect of the majority's holding. First, it places Boards of Education at peril of non-renewal by the company that is insuring a Board at the time criminal charges are filed. Second, it creates a disincentive for other insurers to step in and provide coverage. Third, it places such an insurer at the distinct advantage of setting premiums based not on the actuarial possibility that a criminal charge will be brought during its policy term but on the knowledge that one has already been brought.

The policies at issue are ambiguous regarding the insurance trigger and the statutes they incorporate do not resolve the ambiguity. Although superficially the majority ruled in favor of the Board, the existence of two insurers at the pivotal points guaranteed coverage in any event. The notion that an ambiguous policy is to be interpreted in a light most favorable to the insured and against the drafter should have encompassed consideration of the difficult situation the majority's opinion has set up for Boards of Education. For those reasons, I dissent.

*For reversing*—Chief Justice PORITZ and Justices STEIN, COLEMAN, VERNIERO, LaVECCHIA, and ZAZZALI—6.

*For affirming*—Justice LONG—1.